# Richmond

## REESE TELLIS v. WADE L. TRAYNHAM.

November 30, 1953.

Record No. 4119.

Present, All the Justices.

The opinion states the case.

*Montague, Ferguson, Holt & Cumming,* for the plaintiff in error.

*Kearney, Cofer & Jordan,* for the defendant in error.

BUCHANAN, J. delivered the opinion of the court.

Wade L. Traynham, herein referred to as plaintiff, brought this action for damages for personal injuries suffered by him when a truck he was driving was struck by an automobile owned and driven by Reese Tellis, defendant, at the intersection of Willard avenue and Darlington avenue, in the then town of Phoebus, now in the city of Hampton. He recovered a verdict and judgment which the defendant now seeks to have reversed on the grounds that the plaintiff was as a matter of law guilty of contributory negligence and that error was committed in the admission of testimony.

It is conceded that the evidence was sufficient to establish negligence on the part of the defendant and there is no complaint about the instructions or the amount of the verdict.

The accident happened after dark at approximately 6:05 p. m. on January 10, 1952, on a cold, clear night. Willard avenue runs generally north and south; Darlington avenue east and west. The hard surface of Willard is 25 feet wide, broadening to 40 feet as it joins Darlington, which is a four-lane concrete highway 44 feet wide between curbs, bordered by sidewalks and with the usual double white line separating the two westbound lanes from the two eastbound lanes. There is a stop sign on the right or east side of Willard, 12 feet south of its junction with Darlington, to control northbound traffic.

Plaintiff was driving north on Willard and the defendant was driving west on Darlington. As the plaintiff approached the intersection, he stopped his truck with its front end opposite the stop sign. His truck was new, in good condition and all its driving lights were burning. Three cars were then approaching from his left, running fast. He put

his truck in low gear with the motor running and waited for them to pass. He looked again to his left, saw that no other cars were near from that direction; then looked to his right, saw the car which proved to be the one being driven by the defendant about 500 feet away, approaching at what he judged to be a reasonable speed. The plaintiff thereupon proceeded across the intersection with his truck still in low gear, making five to ten miles an hour. When he reached the middle of Darlington and was entering the first of the westbound lanes, he looked again to his right and saw the defendant's car approaching in that lane 150 to 200 feet away. Plaintiff continued across, not anticipating any danger, he said, and when the front half of his truck had cleared Darlington he heard the brakes being applied on defendant's car, looked back through the cab window of the truck and saw defendant's car swerving into him.

The front of the car struck the right rear of the plaintiff's truck, the ornament on the radiator of the car making a hole or dent in the fender of the truck just over the right rear wheel. The plaintiff said that when the truck swung around from the blow, the car collided with it again with such force as to throw him through the window of the cab and into the street. The car then skidded 44 feet, ending up about the middle of Darlington, facing the southwest corner of the intersection. The truck came to rest 40 feet from the point of collision against a fireplug at the northwest corner. The point of collision was in the north or outside lane of Darlington, four feet from its north curb line and in the northbound lane of Willard.

From the eastern corporate limits of Phoebus to the intersection, as the defendant was driving, was a distance of 460 feet; the speed limit was 25 miles an hour, and 255 feet east of the intersection was a large sign to that effect on the defendant's right, which the defendant said he saw.

The defendant testified that the best he could judge he was driving between 25 and 30 miles an hour as he approached the intersection, with two others in the front seat

with him; that when he first saw the truck the front end had crossed the double white line and he thought it was going to stop; he said he was then about 75 feet away, and when he saw it wasn't going to stop he applied his brakes, but it was too late. He said the reason he did not see the truck sooner was because the lights of the passing cars blinded him. However, he told a police officer later that evening that he did not know the truck was there; that after some approaching cars passed him he saw the truck just in front of him. Some time afterwards he told another witness that he did not know what happened; that he was talking to one of his companions and as he looked up he saw this truck in front of him too late to do anything about it.

In his brief the defendant argues that it was negligence as a matter of law for the plaintiff to start across this four-lane highway from his stopped position after he had seen a car approaching "in close proximity" to the intersection, on the presumption that it was traveling 25 miles an hour. As we have seen, the testimony is that the plaintiff saw the approaching automobile not in close proximity to the crossing, but about 500 feet away. The plaintiff testified that he had crossed that intersection many times and when he saw a car at a certain distance he knew he had plenty of time. He said, "This car was fully out of my distance, I figured to go across with ease." He had a right to presume that the defendant would obey the law and drive within the prescribed limit unless it was, or should have been, reasonably apparent that he was not doing so. The court so instructed the jury without objection from the defendant. *Millard* v. *Cohen*, 187 Va. 44, 51, 46 S. E. (2d) 2, 5; *Rhoades* v. *Meadows*, 189 Va. 558, 563, 54 S. E. (2d) 123, 125.

In fact, in his motion to strike plaintiff's evidence the defendant did not claim that the plaintiff was negligent as a matter of law in starting out from the stop sign. On facts similar to those in this case we have frequently held, and we now hold, that the question was for the jury. *Virginia Elec. & Power Co.* v. *Wright*, 170 Va. 442, 196 S. E. 580; *Temple*

v. *Ellington*, 177 Va. 134, 12 S. E. (2d) 826; *Greenleaf* v. *Richards*, 178 Va. 40, 16 S. E. (2d) 374; *Slate* v. *Saul*, 185 Va. 700, 40 S. E. (2d) 171; *Oliver* v. *Forsyth*, 190 Va. 710, 58 S. E. (2d) 49; *Caldwell* v. *Parker*, 191 Va. 471, 62 S. E. (2d) 34; *Leo Butler Co.* v. *Wilbun*, 192 Va. 263, 64 S. E. (2d) 738.

■ It is equally if not more clear that under the facts it cannot be said as a matter of law that the plaintiff was guilty of negligence in not stopping when his truck reached the center of the road. At that point plaintiff looked again to his right and saw the automobile 150 to 200 feet away, approaching in the lane the plaintiff was entering. The plaintiff testified that the defendant was then far enough away that he did not think he could be hit, and if he had stopped he would have been right in the defendant's path and bound to have been hit. He said: "I saw him coming. I saw no danger of any trouble at all. I had no idea that the terrific speed he was traveling. He was coming in a straight line at that time and I had plenty of time even then, I thought, to proceed on across. I kept on going and when I heard the brakes was the first indication he was going to hit me." If the plaintiff had stopped and then been struck either by a car coming from his left or by the defendant's car from his right, there would have been more basis for imputing negligence to him than is to be found in the evidence before us now.

The trial judge said that if there was contributory negligence on the part of the plaintiff he could not see it. The jury also could not see it. It is clear to us that the evidence does not disclose it as a matter of law.

■ The remaining assignment of error is on the grounds that the plaintiff's witness Sulzberger was allowed to testify as to the speed of an unidentified automobile and in regard to a statement he made to the defendant implying excessive speed on the part of the latter.

Sulzberger lived in a house approximately 200 feet east of the intersection. On the night of the accident he heard

from his kitchen two cars speeding. He went to his front window, saw that they were going east towards Old Point at a speed he estimated to be 65 miles an hour. At the same time he saw another car going west at about the same speed. This westbound car was then just west of a bridge, which the map shows to be about 1100 feet east of the intersection. This westbound car passed the two eastbound cars just a little to the east of Sulzberger's house. After thus seeing these cars, Sulzberger walked back to his kitchen, looked out his back window and saw there had been an accident at the intersection. He did not hear the crash of the accident. He went immediately to the scene, asked who was driving the automobile and the defendant replied that he was; thereupon Sulzberger said, "Man, you must have been going mighty fast;" to which defendant replied, "I wasn't going but 35 miles an hour."

The front window, through which Sulzberger looked and saw the car, as we understand the description of his house, was in the dining room, which adjoins the kitchen. Sulzberger testified that on passing through the door between the dining room and the kitchen he could see all the way to the intersection, and that the only cars he saw were the two going east and the one going west, and from the time he left his house until he reached the intersection no other cars passed. When he arrived at the intersection George Selby "was getting out of his automobile running over to this man laying on the side." Selby and his wife had testified that they had just driven up in front of their house, about two blocks from the intersection, when they heard the brakes, followed by the crash; that they drove immediately to the scene and went to the aid of the plaintiff who was lying near the fireplug.

The circumstances thus proved were sufficient to warrant the admission of this testimony for such weight as the jury thought it should have on the question of the identity of the automobile. See *Burton* v. *Oldfield*, 194 Va. 43, 72 S. E. (2d) 357.

Defendant's objection at the trial to Sulzberger's "statement" to the defendant was that it was not part of the *res gestae*. That would be true if the words of the witness are taken as a statement standing separate and apart from the answer made by the defendant. *Chappell* v. *White*, 182 Va. 625, 633, 29 S. E. (2d) 858, 861.

However, in their context and circumstances the words spoken constituted a question or accusation addressed to the defendant rather than a statement by the witness having the quality of evidence. The defendant so understood it and responded that he was going only 35 miles an hour. This response was clearly admissible as an admission and it was proper to allow the words that elicited the response to be introduced to explain how it occurred.

Furthermore, if the words spoken by Sulzberger had been improperly admitted, that would not be sufficient cause for reversal in this case. They related only to the defendant's negligence, and, as stated, that negligence is conceded and is not in issue on this appeal. *Cf. Slate* v. *Saul, supra,* 185 Va. at p. 708, 40 S. E. (2d) at p. 174.

We find no error and the judgment below is therefore

*Affirmed.*