Richmond

CHARLES CLARENCE ATKINS

v.

COMMONWEALTH OF VIRGINIA

No. 0835-90-2

CHARLES CLARENCE ATKINS

v.

COMMONWEALTH OF VIRGINIA

No. 0836-90-2

Decided December 10, 1991

COUNSEL

James B. Thorsen (Thorsen & Page, P.C., on briefs), for appellant.

Thomas C. Daniel, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

BAKER, J.—Pursuant to two charges of receiving stolen property, Charles Clarence Atkins (appellant) was separately indicted by a grand jury for the Circuit Court of Lancaster County. The two indictments were tried simultaneously before the same jury. These appeals are from judgments of the Circuit Court of Lancaster County (trial court) which convicted appellant on each indictment pursuant to the jury verdicts. Because each appeal presents the same factual issue, we consolidated the cases for argument. The sole issue presented is whether the trial court committed reversible error when it permitted the jury to hear a tape recording produced by a body transmitter as the sale of two stolen guns was being transacted. Upon familiar principles, we state the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom. *Higginbotham v. Commonwealth*, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975).

In May 1989, a commemorative Colt Mosby gun was stolen from a United Parcel Service (UPS) truck. The gun was owned by the American Historical Foundation. In addition, a .357 magnum Smith and Wesson gun was stolen from the home of John Clarke in December 1988. Each theft was reported to the police.

During the summer of 1989, appellant asked David Dilliston (Dilliston) if he knew anyone who would be interested in acquiring the guns. Appellant told him that one would be difficult to sell because it had been stolen from a UPS truck and that both items were "hot." In addition, appellant told Dilliston that the sale price for the two would be $1,300.

On August 10, 1989, Dilliston told Virginia State Police Officer Jenkins and County Sheriff Crockett that appellant was trying to find a purchaser for the guns. Arrangements were made to have J. W. Saudi (Saudi) act as a prospective buyer of the guns. Saudi

was wired with a two-microphone transmitter and given $1,300 with which to complete the purchase. As Saudi approached the house where the sale was to be made, the police remained in a nearby parked vehicle with a receiver-recorder. Saudi was introduced to appellant by Dilliston, who waited outside the house while appellant and Saudi went inside and consummated the sale. The two stolen guns were transferred from appellant to Saudi in exchange for $1,300 paid to appellant. Saudi took the guns, left appellant, and at a predetermined place met Jenkins and Crockett. Saudi gave them the guns and the wire and departed. At trial, the guns were identified by the owners as those that had been stolen from them. Saudi was not available to testify at the trial.

The conversation between appellant and Saudi, during the sale and just before they separated, was transmitted by the wire, tape recorded and heard by Jenkins and Crockett as they waited in their car. They were able to identify the voices they heard. The tape was of poor quality; however, at oral argument, counsel for appellant conceded that he did not specify poor quality as a basis for his objection.[1] We, therefore, review only the question whether it was reversible error to permit the jury to hear that portion of the tape which could be comprehended.

In anticipation that the Commonwealth would seek admission of the tape, counsel for appellant moved that the tape be excluded. He argued that any reproduction of Saudi's statements disclosed by the tape recording constituted inadmissible hearsay. The prosecutor advised the trial court that the hearsay rule was not applicable because he would not be offering Saudi's statements for their truth, but rather only to show the prompt to which appellant responded. In the alternative, the prosecutor suggested that Saudi's statements could be extracted and the jury would hear only appellant's voice, which would show he made statements against his interest.

The trial court opined that the entire tape was admissible but offered to submit a tape to the jury without Saudi's voice being heard. Appellant also objected to that format, saying that Saudi's

---

[1] On appeal, an alleged error will not be sustained unless the objection was stated with reasonable certainty and timely made. *See Justus v. Commonwealth*, 222 Va. 667, 676, 283 S.E.2d 905, 910 (1981), *cert. denied*, 455 U.S. 983 (1982).

statements were essential to an understanding of appellant's responses. He continued to object to the jury hearing the entire tape, asserting that Saudi's statements constituted inadmissible hearsay. The trial court denied appellant's motion to exclude the tape and permitted it to be played in its entirety in the presence of the jury.

In its brief and in oral argument before us, the Commonwealth argued that when appellant declined the trial court's offer to extract Saudi's voice from the tape, appellant invited any error which may have resulted from the introduction of the entire tape. Citing several Virginia cases which observe that a party "cannot approbate and reprobate" and "take advantage of his own wrong," the Commonwealth argues that appellant ought not to be heard on the hearsay issue. Finding that the tape was admissible and, at most, any portion that was intelligible that may have been erroneously admitted was harmless beyond a reasonable doubt, we need not respond to the invited error argument.

We have held that a transcript of a tape recorded in a like manner as in the case before us could be read by the jury as they listened to the tape being played. *Arnold v. Commonwealth*, 4 Va. App. 275, 278, 356 S.E.2d 847, 849 (1987). The Court stated that the transcript was accurate, and not hearsay. *Id.* at 281, 356 S.E.2d at 850-51. Quoting from *People v. Feld*, 305 N.Y. 322, 331-32, 113 N.E.2d 440, 444 (1953), the Court also approved the statement that the best evidence is the recording of the conversation. *Arnold*, 4 Va. App. at 280, 356 S.E.2d at 850.

Whether statements which draw responses are inadmissible as hearsay depends upon the nature of the statements. Words which constitute a question or accusation that result in a party admission are not barred by the hearsay evidence rule. *Tellis v. Traynham*, 195 Va. 447, 453, 78 S.E.2d 581, 584 (1953). *See also* C. Friend, *The Law of Evidence in Virginia* § 267 (3d ed. 1988). It is only when the prompting statements have the quality of evidence (offered for the truth of the matter asserted) that they become inadmissible hearsay. *Tellis*, 195 Va. at 453, 78 S.E.2d at 584.

We must, therefore, accept the invitation of the parties to review the tape to determine what evidence was presented to the jury for its consideration and determine whether that evidence

constituted reversible error. In our review, we are mindful of other testimony which had been presented to the jury prior to their hearing the tape. For example, David Bowling, Vice President of the American Historical Foundation, which manufactured the Colt Mosby gun stolen from the UPS truck, testified that his organization produced the gun in commemoration of an 1860 confederate army officer, John Singleton Mosby, and that its sale price was "2495," later expressed to mean $2,495. At various points on the tape, appellant is heard to speak words which tie in with Bowling's testimony. Significant are expressions such as, "Here's the original papers here"; "Confederate General"; "Pick it up and look at the back of it, still . . . CSA here"; "It's a collector's item"; "the price is 2495"; and "here's the original signature by his grandson."

Toward the end of the tape, without any prompting, appellant is heard giving a short history of how the gun came into his possession:

Let me tell you the whole story.

All right.

The guy was hauling 'em. This one like the Colt [People] the 44, he swiped them off a truck, UPS truck. Okay, now the American Historical Society gotta go back and make an extra gun, 'cause it never showed up there, they don't where they went to they don't know whether it came out of there or disappeared off a truck, 'cause the people signed for them at the place.

Uh huh.

They have no idea where they are at.

Where they got lost, yeah.

Don't know where they got lost at.

These statements clearly support Dilliston's testimony that appellant told him he knew that the Colt Mosby was stolen from a UPS truck, and would be of value to the jury in appraising Dilliston's testimony that appellant told him he had two "hot" guns for sale for $1,300.

In his brief, appellant asserts that Saudi's statements were used to prove "the truth of the matter." He cites, however, no specific examples.[2] We have reviewed the tape and find no statements attributable to Saudi, the truth of which were relevant to prove appellant's guilt. Saudi's recorded statements constitute prompts which produced self-incriminating statements by appellant. Saudi's statements were not offered for the truth. Accordingly, we find no error in the trial court's finding that Saudi's words were not hearsay.

Appellant further argues that the jury should not have been permitted to hear the conversation recorded on the tape because he was deprived of his sixth amendment right to be confronted by Saudi. A similar argument was made to and rejected by the Supreme Court of the United States in *On Lee v. United States*, 343 U.S. 747 (1952). In that case, the wired witness did not testify and his absence was not explained. The Court permitted two officers who heard the transmission by way of the body wire to testify to statements made by the defendant. Thus, even though Saudi did not testify, Jenkins and Crockett could have testified to the admissions made by appellant and transmitted by the body wire. Because Jenkins and Crockett could have testified to what they heard appellant admit, and the admission of the statements made by Saudi did not violate the hearsay rule, we see no constitutional bar to the same evidence being introduced by a duly documented recording upon the proper foundation being laid. *See United States v. White*, 401 U.S. 745 (1971).

While we find no error in permitting the jury to hear the recorded tape, to the extent the tape may have contained evidence not necessarily relevant to the prosecution, viewing the totality of the evidence contained in the record, the admission of the irrele-

---

[2] The Commonwealth called to our attention the following recorded statement made by Saudi, the truth of which "possibly" could have been relevant to appellant's guilt:

All right, give me the plastic bag over there. I'll go put this in the car and I'll bring you back your money.

Right.

Now we're talking 1,300, right?

Yeah.

Saudi's statement only repeats Dilliston's testimony as to price and the amount Jenkins testified he gave Saudi. If used to prove the truth of the matter asserted, it is harmless beyond a reasonable doubt.

vant portions of the tape was harmless beyond a reasonable doubt.

For the reasons stated, the judgments of the trial court are affirmed.

*Affirmed.*

Elder, J., concurred.

Benton, J., concurring.

I agree that, as a general rule, statements made in a taped conversation by persons other than the defendant are not hearsay if admitted, not for their truth, but "to make [defendant's] responses intelligible to the jury and recognizable as admissions." *United States v. Lemonakis*, 485 F.2d 941, 948 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 989 (1974). *See also United States v. Jordan*, 810 F.2d 262, 264 (D.C. Cir.), *cert. denied*, 481 U.S. 1032 (1987). In this case, a hearsay objection was made. However, the jury was not instructed that the informant's statements were not to be considered for their truth. The error in admitting the statements without limitation was not rendered harmless because the police officers could have testified to what the defendant said. Neither officer gave testimony concerning the defendant's statements. Thus, we do not know what, if anything, they heard the defendant say or what they could have related at trial.

Instead, I am persuaded by other circumstances that the error in failing to instruct the jury concerning the tapes was harmless. The Commonwealth did not transcribe the tape "[b]ecause of the poor quality on it and also the time that would be involved in trying to have a secretary transcribe it." Furthermore, the detective who had the tape testified as follows:

Q: Isn't it true you couldn't identify what speaker said what at certain points in time in this transcription?

A: That's true. Yes, sir. Like I said, the poor quality of the tape kind of prohibited one of the secretaries from trying to transcribe it.

The tape was offered only to corroborate David Dilliston's testimony that two stolen guns, which the informant purchased and delivered to the police, had been in the defendant's possession. The defendant identifies no statement made by the informant that

was intelligible on the tape and was offered for the truth of its content. Thus, no harm or prejudice is shown by the failure to caution the jury concerning the consideration of the evidence.