COURT OF APPEALS OF VIRGINIA

Present: Judges Baker, Annunziata and Overton
Argued at Norfolk, Virginia

TERRY FEEBACK

v.          Record No. 2469-95-1

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE ROSEMARIE ANNUNZIATA
MAY 13, 1997

FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Edward W. Hanson, Jr., Judge

> J. Roger Griffin, Jr. (Christie & Kantor, on brief), for appellant.

> Leah A. Darron, Assistant Attorney General (James S. Gilmore, III, Attorney General, on brief), for appellee.


Following a jury trial, appellant, Terry Feeback, was convicted of rape. On appeal, he contends the trial court erred in allowing the jury to hear certain statements made during his interrogation concerning the alleged crime. Finding no error in the trial court's admission of the statements, we affirm.

I.

Kimberly Chapman testified that she met appellant and his friend, Joshua Angel (Josh), at a Virginia Beach bar. Chapman, who had been drinking, discussed "doing drugs" with appellant and Josh. Chapman, appellant and Josh left the bar and proceeded to a hotel room, intending to smoke crack cocaine. Chapman testified that she had money to pay for the drugs, and she denied

---

[*]Pursuant to Code § 17-116.010 this opinion is not designated for publication.

appellant's contention that she had offered to perform sexual acts with appellant and Josh in return for drugs or money. At the hotel room, Chapman placed a telephone call, attempting to obtain some crack. When it became evident that she would be unable to obtain any crack, Chapman attempted to leave.

Chapman testified that as she moved toward the door, appellant pushed her back onto the bed. Appellant threatened Chapman and told her he wanted her to perform oral sex on him. While Josh restrained Chapman's arms, appellant removed her shorts and Chapman performed oral sex on appellant. Chapman testified that, during these events, appellant continually struck her on the head and called her a "crack whore." Appellant also attempted to insert his penis in Chapman's vagina, but his attempts to have intercourse with Chapman were short-lived because of a failed erection. Appellant continued to threaten and curse Chapman during these efforts. When appellant stopped, he ordered Chapman to "please" Josh. Josh penetrated Chapman's vagina with his penis. Meanwhile, appellant sat on the bed behind Chapman's head; he later sat in a chair to the side of the bed. When Josh's intercourse with Chapman ended, appellant stated that he intended to phone the front desk to complain about Chapman soliciting sex. Chapman gathered her clothes and left. Chapman's complaint of rape was corroborated by the investigating detective and the emergency room nurse to whom she was referred.

Some hours later, appellant was interrogated by Detective

Ball. Appellant told Ball that he and Josh met Chapman at a Virginia Beach bar and that the three of them returned to the hotel room. He stated that Chapman sought to "sell herself" to the two men upon reaching the doorway of the room. He stated that he then called security, and Chapman ran away. Ball then stated, "[w]ell, she's claiming that she was raped by your buddy and orally sodomized by you." Appellant responded, "[t]o my knowledge there was no sex whatsoever that went on in that room." Appellant again stated that Chapman needed money and that she had attempted to sell herself.

Appellant then stated that Chapman had first attempted to sell herself upon exiting the bar, and he subsequently acknowledged that Chapman came inside the hotel room to place a call, attempting to obtain crack. Appellant also stated that Chapman remained in the room for an hour but that he went to sleep. Ball then commented, "[w]ell, according to other people, you were awake." When Ball asked whether Josh had sex with Chapman, appellant responded that he did not know. Ball responded, "He's already told me he did. Okay? . . . Now, tell me what happened."

Appellant denied having sex with Chapman but admitted having oral sex with her. Appellant stated that he could not get an erection, so that was the end of his "deal." Although he acknowledged that Josh and Chapman then had sex, he maintained that the sex was consensual and that Chapman wanted the men to

buy her crack in exchange for sex. Appellant told Ball that Chapman became upset and demanded to be paid for the sexual acts when it became apparent to her that the crack deal would not go through. He stated that he told Chapman to leave and called the front desk to assure her departure. Ball stated, "Well, I've heard it differently than what you're telling me . . . . [T]hat's not what she told me. That's not what Josh told me," but appellant maintained his account of the events.

In response to further questions from Ball, appellant denied having hit or threatened Chapman. Continuing the interrogation, Ball then stated, "Josh has told me pretty much similar to what she's told me, and . . . you're telling me something a lot different than what they've told me." When appellant continued his denials, Ball left to interview Josh for the first time.

Upon returning from interviewing Josh, Ball told appellant, "I just got done talking to Josh again. Okay. And he's really upset. He's over there crying like I've never seen a man cry before. . . . [H]e's pretty much told me everything and he's hoping that you'll do the right thing." Ball then stated, "[Josh] told me you hit her." In response, appellant admitted that he struck Chapman once on the head but stated he was just "joking around." Appellant also admitted that he attempted to insert his penis in Chapman's vagina but stated he could not get an erection; he further admitted that he and Josh had sex with Chapman at the same time but stated he did not remember Chapman

being upset or afraid.  To appellant's latter contention, Ball responded, "Josh does."  Appellant then admitted having smacked Chapman another time but characterized the smack as foreplay. Ball continued by telling appellant that Josh was "so sick," that "he's worked himself up into such a tizzy and -- and he feels really bad about it, and I think he's sincere."  Appellant responded by admitting that he inserted his penis into Chapman's mouth and told her to perform oral sex on him a second time from the back of the bed, while Josh was penetrating her vagina.

When appellant denied the use of force, Ball asked, "Well, why was Josh trying to tell her . . . do what he says?" Appellant again denied using force, but he admitted he could have been a "little mean," raising his voice when he told Chapman to perform oral sex on him and calling her a whore.  Appellant also admitted telling Chapman to perform oral sex on Josh and that he may have hit Chapman more than twice.

## II.

Appellant contends that the trial court erred in allowing the jury to hear the statements made and questions posed by Ball during the interrogation which related the alleged statements of Josh and Chapman.  Specifically, he contends that those statements were inadmissible hearsay and "highly prejudicial" and, therefore, should have been redacted from the presentation to the jury.[1]  We disagree.

---

[1]The Commonwealth argues that appellant is procedurally barred from raising a constitutional claim.  However, we do not

While Virginia courts have not addressed the precise issue before us, we find the controlling principle well articulated in Atkins v. Commonwealth, 13 Va. App. 365, 412 S.E.2d 194 (1991).

> Whether statements which draw responses are inadmissible as hearsay depends upon the nature of the statements. Words which constitute a question or accusation that result in a party admission are not barred by the hearsay evidence rule. It is only when the prompting statements have the quality of evidence (offered for the truth of the matter asserted) that they become inadmissible hearsay.

Id. at 368, 412 S.E.2d at 196 (citing Tellis v. Traynham, 195 Va. 447, 453, 78 S.E.2d 581, 584 (1953)); see also State v. Miller, 921 P.2d 1151, 1159 (Ariz. 1996) (declarant's statement, made during course of interrogation, admitted to show effect on defendant during interrogation, not for its substantive content and therefore not hearsay); Williams v. State, 669 N.E.2d 956, 958 (Ind. 1996) (declarant's statements largely designed to prompt defendant to speak held not to be hearsay; "it was the statements made by [defendant] that really constituted the evidentiary weight of the conversation"); Worden v. State, 603 So.2d 581, 583 (Fla. App. 1992) (questions propounded and statements of detectives not offered for their truth, but to place defendant's answers in context).

(..continued)
read appellant's brief to assert a constitutional claim independent of his hearsay contention. Appellant simply frames his hearsay argument, in part, in terms of the right to confront witnesses, a right necessarily affected by the admission of hearsay evidence.

The statements at issue in the present case were not offered for the truth of the matter asserted. Rather, they were offered to show the prompts to appellant's statements and the context of the interrogation, throughout which, appellant's version of events changed dramatically. As such, the statements were not objectionable as hearsay. See Atkins, 13 Va. App. at 368, 412 S.E.2d at 196.

It remains only to determine whether the probative value of the statements is outweighed by the harm or prejudice to appellant. See Worden, 603 So.2d at 583. We find that appellant's case was not prejudiced by the admission of the statements. "Since the questions were set forth in their proper context, interrogation of a suspected [rapist], we conclude that a rational jury would understand that law enforcement officers use many techniques to secure confessions and that the methods used here were indicative of that." Id. Indeed, Ball admitted on cross-examination that she spoke to Josh for the first time when she left in the midst of appellant's interrogation. As such, the jury was fully aware that Ball's statements concerning what Josh had told her prior to that point were subterfuge. Furthermore, appellant's own statements ultimately established the material facts asserted in the statements he challenges. By the end of the interrogation, appellant acknowledged having struck Chapman at least twice and having spoken to her in a "mean" tone as he told her to perform oral sex on him. On all

- 7 -

material points, appellant's ultimate statements corroborated Chapman's testimony.

The decision of the trial court is accordingly affirmed.

<u>Affirmed.</u>