# COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, Ortiz and Senior Judge Annunziata
Argued at Fairfax, Virginia


CHARLES WILLIAM NEWMAN, III

MEMORANDUM OPINION[*] BY
v.      Record No. 1697-22-4          JUDGE ROSEMARIE ANNUNZIATA
OCTOBER 10, 2023

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF WINCHESTER
Brian M. Madden, Judge

Jonathan L. Silvester (Jason E. Ransom; Ransom/Silvester, on brief),
for appellant.

Francis A. Frio, Senior Assistant Attorney General (Jason S.
Miyares, Attorney General; Leanna C. Minnix, Assistant Attorney
General, on brief), for appellee.


Charles William Newman, III, appeals his mandatory life sentence for malicious wounding,

third or subsequent offense under Code §§ 18.2-51.2 and 19.2-297.1.  He argues that the trial court

erred in admitting a jail call recording into evidence, violating the hearsay rule and the Sixth

Amendment, and that the evidence was insufficient as a matter of law to find him guilty.  He also

argues that the trial court erred in denying his motion for mistrial for juror misconduct and finding

that the Commonwealth provided timely notice of intent to seek a life sentence as required by Code

§ 19.2-297.1(B).  We find that the admission of the jail call did not violate the hearsay rule or the

Sixth Amendment and that the evidence was sufficient to sustain Newman's conviction.  We cannot

consider the remainder of Newman's claims because the trial court did not rule upon them when it

had jurisdiction to do so under Rule 1:1(a).  Finding no error, we affirm the trial court's judgment.

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

PROCEDURAL BACKGROUND

In February 2022, the grand jury in the City of Winchester indicted Newman for aggravated malicious wounding of Nikki Pugh under Code § 18.2-51.2. The indictment stated this was a third offense and cited Code § 19.2-297.1, which requires a mandatory sentence of life imprisonment upon conviction. Before trial, the Commonwealth amended the indictment by striking the language charging Newman with an aggravated offense, leaving only malicious wounding, third or subsequent offense under Code § 18.2-51.

On July 12, 2022, the Commonwealth mailed Newman a letter offering two possible plea agreements that would "strike the mandatory life sentence requirement." On September 27, 2022, 17 days before the jury trial, the Commonwealth sent a second letter to Newman "writing to clarify the Commonwealth's intent regarding sentencing" and noting the "mandatory sentence at life imprisonment" if he were convicted of his charged offense. Newman replied by letter stating the Commonwealth "didn't have to send" the letter because he "know[s] the deal" and he would see the prosecutor at trial. The case was tried by a jury on October 14, 2022.

STATEMENT OF FACTS

"On appeal, we view the record in the light most favorable to the Commonwealth because it was the prevailing party below." *Delp v. Commonwealth*, 72 Va. App. 227, 230 (2020). "Viewing the record through this evidentiary prism requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" *Commonwealth v. Cady*, 300 Va. 325, 329 (2021) (quoting *Commonwealth v. Perkins*, 295 Va. 323, 323-24 (2018)).

The genesis of this case is an assault on Nikki Pugh on October 16, 2021. Newman and Pugh were in a relationship and had a child together. They, together with Derrick Maxwell and Brandy Peacoe, were at Newman's home consuming alcohol and illegal drugs. Maxwell and

Peacoe were in a relationship, and Maxwell was Newman's cousin. Maxwell, Pugh, and Peacoe left Newman at the home to go to a grocery store; while they were out, Newman called Maxwell and accused him of having a sexual relationship with Pugh. When they returned to the home, Newman came downstairs armed with a butcher knife. Newman stabbed Pugh toward the top of her head and twice more in her chest. Maxwell, Peacoe, and Pugh fled the house. Steve Sheldon, a neighbor, saw Newman tackle Pugh to the ground, and then punch, kick, and stomp her body. Pugh sat on the roadside curb as Newman continued punching and kicking her until she "slumped back" and Newman reentered the house. When police arrived, Pugh remained on the ground bleeding with multiple cuts; a bloody wrench was nearby.[1]

Newman responded to the police officers' attempts to talk to him at the scene of the assault by repeating "fuck you." During later questioning, Newman claimed that all three of the others at the scene attacked him when they entered his house; he had no explanation for how Pugh became injured. The officers entered the home using SWAT procedures, detained Newman, and removed the couple's child. While in the house, one of the officers saw blood on the floor between the back door, front door, living room, and the railing of the stairway. While Newman was being detained, a bloodied cut was observed on his hand.[2]

Newman was transported to the hospital for medical treatment. During transport and treatment, Newman made unsolicited statements to law enforcement that he had previously served time in prison and he had "no problem" doing it again. He further said that Pugh "deserved what

---

[1] When she was subsequently treated by a forensic nurse, Pugh's injuries were found to include 13 stab or laceration wounds on her face, head, neck, arms, back, and shoulders, as well as a broken jaw and significant bruising due to blunt force trauma. Photos of these injuries before and after treatment were admitted in evidence.

[2] Newman later claimed the injury on his hand was due to Maxwell attacking him with a knife. However, the officer testified that in her training and experience that type of cut often occurs to a knife assailant attempting to stab when the knife slides into the assailant's hand.

she got" and that he became upset with her that day when he realized she had deleted photos of him off her phone and used crack cocaine. He stated, "Her ass was alive. So guess what? I'm getting back out. If she dies, fuck it give me a lethal injection."

A knife that was found discarded in a bush outside the home, approximately five to ten feet away from the wrench, was subjected to a DNA analysis that was introduced at trial. It showed Newman could not be eliminated as a contributor to DNA located on the knife handle. An additional DNA analysis showed that Pugh and Newman could not be eliminated as contributors to DNA located on the stained blade of the knife. The Commonwealth introduced the October 17, 2021 jail call in which Newman answered "yeah" when asked if he stabbed Pugh.

Newman testified that when Pugh, Maxwell, and Peacoe returned to his home, Maxwell attacked him and struck Pugh in the back of the head with a knife. When the fight continued outside the home, Peacoe and Maxwell continued attacking Pugh. He claimed he had sustained injuries to his forehead, hand, and abdomen, requiring stitches for the hand wound. He explained that he did not provide this level of detail to law enforcement the night of the attack because he just does not "talk to the police like that."

Testifying for Newman at trial, Pugh claimed that she had no recollection of what happened when she entered the home and Newman appeared in front of her. She said that someone hit her from behind, and she denied seeing Newman stab or assault her. Pugh then claimed she did not recall blaming the attack on Newman to any law enforcement officers or medical providers. However, Pugh admitted telling the Commonwealth's attorney that she thought "it might have been" Newman but explained that she only did so to go along with what "everybody wanted me to say."

In rebuttal, Detective Mala Bansal testified that in the days after the attack, Pugh described her assault in detail and identified Newman as the attacker; the Commonwealth introduced audio

recordings of Pugh's statements. Pugh also told the police that Newman was a manipulator that would treat her well before turning into a "monster." Detective Bansal stayed in contact with Pugh after the attack and testified that Pugh never blamed the assault on Maxwell. Forensic nurse Lisa Sanders testified that during treatment, Pugh blamed Newman for her injuries. The Commonwealth also introduced phone calls and text messages between Newman and Pugh. On July 5, 2022, he told Pugh "[i]f you come to [c]ourt[,] we might as well be done." On October 7, 2022, he told her that she did need to attend court and testify that Newman "didn't do it," or else he's "going to jail for a long time." In a text message on October 8, 2022, Newman told Pugh to answer questions with a "no, [Newman] did not punch, kick or stab me on October 16th last year" and that she could refuse to answer questions by the Commonwealth. He told her she needed to testify she was "pressured into saying" her prior statements blaming him for the attack.

The jury found Newman guilty of malicious wounding, third or subsequent offense. On that same day, Newman waived the presentence report and asked to be sentenced immediately. He asked the trial court not to impose a life sentence but gave no legal reasoning why the statute did not apply. The trial court entered a final order on October 19, 2022, convicting Newman and sentencing him to life in prison.

Newman then filed a motion to set aside the sentencing, arguing that the Commonwealth failed to comply with Code § 19.2-297.1 by not timely providing the necessary notice in writing of the intention to seek life imprisonment. Newman also filed a motion for mistrial based on juror misconduct. The trial court never stayed the final sentencing order. On November 10, 2022, the trial court entered an order denying Newman's motion to set aside the sentence. This appeal followed.

ANALYSIS

I. Jail Call

Newman filed a pretrial motion *in limine* to exclude a jail call recording of his conversation with his mother in which he answered "yeah" when asked "did you stab her?"[3] The trial court denied his motion. On appeal, Newman contends that the admission of the jail call violated both the rule against hearsay and his confrontation rights under the Sixth Amendment. We find no error in the admission of the recording.

The "determination of the admissibility of relevant evidence is within the sound discretion of the trial court subject to the test of abuse of that discretion." *Pulley v. Commonwealth*, 74 Va. App. 104, 118 (2021) (quoting *Jones v. Commonwealth*, 71 Va. App. 597, 602 (2020)).

Under Virginia Rule of Evidence 2:803(0), a criminal defendant's "[e]xtra-judicial admissions that tend to show guilt . . . are admissible as party admissions." *Paden v. Commonwealth*, 259 Va. 595, 597 (2000) (citing *Prince v. Commonwealth*, 228 Va. 610, 613 (1985)); *see* Va. R. Evid. 2:803(0). Newman's affirmative response that he stabbed Pugh during the recorded phone call was therefore admissible under Rule 2:803(0) as a party admission, "under an exception to the rule against hearsay." *Jones*, 71 Va. App. at 605 (quoting *Atkins v. Commonwealth*, 68 Va. App. 1, 8 (2017)).

While Newman's admission in response to his mother's question was admissible for the truth of the matter asserted, the question posed by his mother only provided the context for Newman's response and was properly admitted. *See* Va. R. Evid. 2:801(c) (out-of-court statement is hearsay only if admitted for the truth of the matter asserted). This Court has

---

[3] At trial, Newman explained the admission on his phone call as taking responsibility for the stabbing, even if he did not physically commit the stabbing himself.

"recognized that words offered solely to give context to party admissions are not hearsay and are admissible." *Swain v. Commonwealth*, 28 Va. App. 555, 560 (1998). Accordingly, "[w]ords which constitute a question or accusation that result in a party admission are not barred by the hearsay evidence rule." *Id.* (quoting *Atkins v. Commonwealth*, 13 Va. App. 365, 368 (1991)). "[I]f the declaration is offered solely to show that it was uttered, without regard to the truth or falsity of its content, the declaration is not excluded by the hearsay rule." *Bryant v. Commonwealth*, 39 Va. App. 465, 473 (2002) (quoting *Evans-Smith v. Commonwealth*, 5 Va. App. 188, 197 (1987)).

Here, the Commonwealth introduced Newman's mother's question "did you stab her?" to give context to Newman's admission when responding "yeah." The question alone contained no inherent assertion. The relevant statement the Commonwealth relied upon was Newman's answer of "yeah," which was admissible as a party admission. In short, the introduction of the question giving context to that admission without regard to the truth or falsity of its content, did not violate the hearsay rule.

It follows that the admission of the mother's question also did not violate Newman's Sixth Amendment confrontation right. "Even if an out-of-court statement is testimonial, the statement is not excluded by the Confrontation Clause unless it is offered for the truth of the matter asserted and, consequently, qualifies as hearsay." *Bennett v. Commonwealth*, 69 Va. App. 475, 489 (2018) (citing *Hodges v. Commonwealth*, 272 Va. 418, 429-32 (2006)). As noted above, the mother's question was not introduced for the truth of any matter asserted and only gave context to Newman's response, thereby not qualifying as hearsay, and its admission therefore did not violate Newman's Sixth Amendment rights.

## II. Sufficiency of the Evidence

Newman argues that the evidence was insufficient as a matter of law to sustain his guilt for malicious wounding. When sufficiency of the evidence is challenged, we determine "whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Cady*, 300 Va. at 329 (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)). "Determining the credibility of witnesses . . . is within the exclusive province of the jury, which has the unique opportunity to observe the demeanor of the witnesses as they testify." *Lea v. Commonwealth*, 16 Va. App. 300, 304 (1993). This determination will not be disturbed unless the witness' testimony is "inherently incredible, or so contrary to human experience as to render it unworthy of belief." *Kelley v. Commonwealth*, 69 Va. App. 617, 626 (2019) (quoting *Johnson v. Commonwealth*, 58 Va. App. 303, 315 (2011)).

On appeal, Newman does not contend that the evidence was insufficient as to any of the elements of the offense. He instead only argues that the evidence was insufficient to identify him as the person who attacked Pugh. We disagree.

Both Maxwell and Sheldon, who witnessed the attack, unequivocally identified Newman as the person who stabbed and beat Pugh. After the police arrived, Maxwell stayed on scene, talked to officers, and offered his assistance in talking to Newman, while Newman refused to exit his home and cursed at law enforcement. Newman made incriminating statements to law enforcement after his arrest, including venting his frustrations with Pugh, stating she "deserved what she got," and admitting he would go to jail but be released if she lived. He also commented that the police should give him a lethal injection if Pugh died. Importantly, Newman admitted on a phone call with his mother that he stabbed Pugh. The DNA evidence could not eliminate Newman as the contributor to the DNA on the knife's handle. Pugh's injuries were consistent with the attack described by Maxwell and Sheldon, including stab and cut wounds, significant

bruising, and a broken jaw. Newman's own injury, a cut on his hand, was consistent with an assailant wielding a knife and stabbing another person.

Although Pugh testified that someone other than Newman attacked her, the jury was entitled to evaluate her credibility in light of the Commonwealth's impeachment evidence. Immediately after the attack, Pugh clearly identified Newman as the assailant both to the police and Sanders. Before trial, Pugh never made statements to law enforcement consistent with her trial testimony. The jury was also entitled to consider the communications between Pugh and Newman in which Newman instructed Pugh to testify that he did not attack her.

Considering the totality of the evidence, a reasonable finder of fact could conclude beyond a reasonable doubt that Newman was the person who attacked Pugh and that he was guilty of malicious wounding. In light of the corroborating evidence, we do not disturb the jury's determination finding Maxwell's and Sheldon's identification testimony was not "inherently incredible, or so contrary to human experience as to render it unworthy of belief." *Kelley*, 69 Va. App. at 626 (quoting *Johnson*, 58 Va. App. at 315).

### III. Post-Sentencing Motions

Newman contends that the trial court erred in refusing to declare a mistrial for juror misconduct[4] and failing to set aside his sentence for the Commonwealth's failure to provide proper notice of its intention to seek a life sentence. However, we cannot consider these claims because Newman failed to obtain a ruling on these issues from the trial court while it retained jurisdiction.

---

[4] During jury deliberations, one of the jurors, Heather O'Callahan, used her phone to look up the definitions of "PTSD," "gaslighting," and "Stockholm Syndrome." In a post-trial hearing, she testified she did so because she was upset that the victim recanted when "based on everything [the juror saw at trial] it was so evident" that Newman attacked Pugh and wanted to understand why Pugh would recant. O'Callahan did not discuss the terms she reviewed with the other jurors and "didn't sway anyone and there wasn't a debate in the room at any point" concerning why Pugh recanted.

The trial court entered the final sentencing order on October 19, 2022, and did not stay, modify, or suspend the sentencing order. Under Rule 1:1, the trial court retained jurisdiction to rule upon Newman's motions until November 9, 2022. Thus, by the time the trial court entered the order denying Newman's motions on November 10, 2022, it no longer had jurisdiction over the matter and the trial court's November 10, 2022 "written order and the ruling[s] it purports to memorialize are legal nullities." *Bailey v. Commonwealth*, 73 Va. App. 250, 261-62, 264 (2021) ("In determining whether a circuit court retains jurisdiction over a matter when it issues a ruling, the critical event is the circuit court's entry of a written order and not any pronouncements the circuit court may make from the bench."). "Neither 'the filing of post-trial or post-judgment motions, nor the trial court's taking such motions under consideration, nor the pendency of such motions on the twenty-first day after final judgment is sufficient to toll or extend the running of the twenty-one day time period of Rule 1:1.'" *Wells v. Shenandoah Valley Dep't of Soc. Servs.*, 56 Va. App. 208, 213 (2010) (quoting *Super Fresh Foods Mkts. of Va., Inc. v. Ruffin*, 263 Va. 555, 560 (2002)). After entry of a final judgment, "[t]he twenty-one-day period is only tolled . . . through entry of an order that 'expressly modifies, vacates, or suspends the judgment.'" *Id.* (quoting *Ruffin*, 263 Va. at 562); *see also Coe v. Coe*, 66 Va. App. 457, 468 (2016).

Newman's failure to obtain a ruling on his post-sentencing motions while the trial court retained jurisdiction "leav[es] us with no decision of the circuit court on th[ese] issue[s] to consider on appeal." *Bailey*, 73 Va. App. at 264. Accordingly, we cannot consider these claims.

CONCLUSION

For the foregoing reasons, we affirm the order of the trial court.

*Affirmed.*