768 P.2d 792

**Marcia PIERSON, individually and as personal representative of the estate of Ruel "Bud" L. Pierson, deceased, Plaintiff–Appellant–Cross Respondent,**

v.

**Ronald L. BROOKS and Shirley Brooks, husband and wife, Defendants–Respondents–Cross Appellants.**

No. 16984.

Court of Appeals of Idaho.

Jan. 3, 1989.

Petition for Review Denied
March 17, 1989.

John R. Goodell (Racine, Olson, Nye, Cooper & Budge), Pocatello, for plaintiff-appellant-cross respondent.

Curt R. Thomsen (Holden, Kidwell, Hahn & Crapo), Idaho Falls, for defendants-respondents-cross appellants.

SUBSTITUTE OPINION

The Court's prior opinion, dated November 4, 1988, is hereby withdrawn.

BURNETT, Judge.

This appeal presents another chapter in the unfortunate saga of a fishing trip that resulted in an altercation and ended with one man's death. Following this tragic event, the decedent's wife, Marcia Pierson, sued Ronald and Shirley Brooks for wrongful death, battery and the negligent or intentional infliction of emotional distress. A jury rejected each of these claims. The district judge denied all post-trial motions attacking the verdict, except that he grant-

ed a judgment n.o.v. on the battery claim, awarding $2,500 in damages. Despite this award, the judge deemed Mr. and Mrs. Brooks to be the prevailing parties, and he awarded them costs in an amount slightly greater than Mrs. Pierson's recovery on the battery claim.

Mrs. Pierson now raises several issues on appeal. With respect to the wrongful death claim, she asserts that the trial court erred in failing to grant a new trial. On all claims she contends that the jury's verdict was not supported by the evidence. She also challenges the judgment n.o.v. entered in her favor on the battery claim, arguing that the judge should have ordered a new trial on damages rather than fixing the amount himself. Finally, Mrs. Pierson contends that the trial judge abused his discretion in assessing costs against her. On cross-appeal, Mr. and Mrs. Brooks assert that the trial judge erred in overturning the jury's verdict on the battery claim. For reasons explained below, we affirm the trial court's judgment in part, vacate it in part, and remand the case.

The facts essential to our opinion may be stated briefly. On a warm June day in 1985, Ronald and Shirley Brooks took their family on a camping and fishing trip at Crowther's Reservoir, near Malad City, Idaho. They began to fish from the bank at a location adjacent to a position occupied by the Piersons. The Brooks family had brought from home a long plank which they used while walking over the mud at the water's edge. At some point during the morning, the board was left unattended and Mr. Pierson began to use it. Mr. Brooks later approached Pierson and asked him to return the plank. Pierson refused and an argument ensued. There was some shoving and swinging, although the record is unclear as to whether the men actually landed any blows. The two wives also became involved when Shirley Brooks grabbed Marcia Pierson by the shirt collar to prevent her from entering the fray. At some point during the emotional confrontation, Mr. Pierson collapsed and died from massive heart failure. This lawsuit followed.

In her complaint, Mrs. Pierson alleged that Mr. Brooks had caused her husband's death and that Brooks had inflicted emotional distress upon her as a witness to the event. Mrs. Pierson added separate claims against Shirley Brooks for battery and for infliction of emotional distress. As noted, the jury found against Mrs. Pierson on all claims, but the judge gave her $2,500 in a judgment n.o.v. on the battery claim against Mrs. Brooks.

## I

We first discuss Mrs. Pierson's contention that the district judge should have granted her a new trial on the wrongful death and emotional distress claims.[1] Mrs. Pierson's theory at trial was that Ronald Brooks had accosted her husband, striking a blow to his face. She contended that this conduct triggered the heart failure and proximately caused her husband's death. After the jury returned a defense verdict, Mrs. Pierson sought a new trial upon the grounds of passion or prejudice, erroneous admission of evidence concerning collateral source death benefits, lack of sufficient evidence to support the verdict, failure of the trial court to instruct the jury on punitive damages, and improper admission of character evidence. The trial judge concluded that a new trial was not justified on any of these grounds. However, as we will now explain, we conclude that the improper admission of character evidence warranted a new trial. Accordingly, we will discuss that issue first; then we will discuss other points briefly for guidance on remand.

## A

■ Our standard for reviewing the denial of a motion for new trial under I.R. C.P. 59(a) is well settled. The trial judge's decision will be upheld unless the judge has abused his discretion. *Quick v. Crane*, 111

---

1. Although the emotional distress claims were made against both Mr. and Mrs. Brooks, there was no evidence, other than testimony regarding the alleged battery, directed against Mrs. Brooks. The case dealt almost entirely with the conduct of Mr. Brooks and the claims against him. Accordingly, although the emotional distress claim against Mrs. Brooks may have been included in the new trial motion, we will not discuss it separately.

Idaho 759, 727 P.2d 1187 (1986). However, as in other discretion-exercising functions, the trial court's authority is not boundless. In determining whether discretion has been properly exercised, the appellate court conducts a multi-tiered inquiry. We ask (1) whether the lower court rightly perceived the issue as one of discretion; (2) whether the court acted within the outer boundaries of such discretion and consistently with any legal standards applicable to specific choices; and (3) whether the court reached its decision by an exercise of reason. *Associates Northwest, Inc. v. Beets,* 112 Idaho 603, 733 P.2d 824 (Ct.App.1987). This analytical framework applies not only to the general issue of whether a new trial should have been granted, but also to the more specific question of whether the trial judge abused his discretion in admitting character evidence. As to this question, our analysis focuses primarily on the second query—whether the trial judge acted consistently with legal standards governing his discretionary ruling.

Rule 404, I.R.E., provides that character evidence is not admissible unless it falls within several enumerated exceptions. One of those exceptions is "[e]vidence of the character of a witness, as provided in Rules 607, 608 and 609." Rule 608(a) is pertinent here. The rule provides as follows:

(a) Opinion and reputation evidence of character. The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.

In the present case, the character evidence consisted of testimony by a police officer and two other persons acquainted with Mr. Brooks. These witnesses possessed *no* direct knowledge of the events giving rise to the litigation. They were called solely to give character evidence.

Each stated that, in his opinion, Mr. Brooks had a good character for truthfulness.

In deciding whether to admit such testimony, the trial judge's threshold task under Rule 608(a) was to determine whether Mr. Brooks' character had been "attacked by opinion or reputation evidence or otherwise." Unfortunately, the judge made no such determination on the record. Indeed, he initially commented that any evidence of character for truthfulness would not be admitted; however, a few moments later, without explanation, he overruled Mrs. Pierson's objection and allowed the witnesses to testify.

Lacking a determination by the trial judge, we must independently decide upon the record whether the challenged testimony was preceded by an attack upon Mr. Brooks' character for truthfulness. It is clear that *no direct attack occurred.* No witness offered an opinion or gave reputation evidence to the effect that Mr. Brooks had a character for untruthfulness. However, counsel for Mr. and Mrs. Brooks has argued, in a well-written set of briefs, that Mr. Brooks' character was "otherwise" attacked during cross-examination by Mrs. Pierson's attorney.

Before reviewing the cross-examination, we acknowledge that the term "otherwise," as used in Rule 608(a), embodies a recognition that a witness's character might be attacked through questions or evidence ostensibly directed at an issue in the case, but having the real effect of impugning the witness. "Whether evidence in the form of contradiction is an attack upon the character of the witness must depend upon the circumstances." Advisory Committee on Federal Rules of Evidence, Note on Rule 608 (essentially identical to the Idaho rule). Thus, *if evidence is presented of corrupt misconduct by the witness, even if germane to an issue in the case, it is generally agreed that the witness's character for truthfulness has been attacked.* 3 J. WEINSTEIN, WEINSTEIN'S EVIDENCE § 608[08] (1984); E. CLEARY, McCORMICK ON EVIDENCE § 49 (1984) (hereafter cited as McCORMICK). Moreover, "a slashing cross-examination may carry

strong accusations of misconduct and bad character, which the witness's denial will not remove from the jury's mind." McCORMICK § 49 at 117. Conversely, cross-examination which attacks the witness's testimony, but which contains no personal attack upon the witness's veracity, does not trigger a right to present opinion testimony on the witness's character for truthfulness. *E.g., United States v. Medical Therapy Sciences, Inc.*, 583 F.2d 36 (2d Cir.1978), *cert. denied*, 439 U.S. 1130, 99 S.Ct. 1049, 59 L.Ed.2d 91 (1979).

In the present case, the cross-examination of Mr. Brooks occurred at the outset of the trial, when he was called as an adverse witness. Mrs. Pierson's counsel asked Mr. Brooks about the unfortunate events on the day in question, and he challenged Brooks' testimony on numerous points. Counsel established that Mr. Brooks' testimony included certain factual allegations—e.g., that Mr. Pierson made the first shove and took the first swing— which had not been mentioned in a terse hand-written statement given by Brooks to a sheriff's deputy shortly after the incident. Counsel also elicited from Mr. Brooks a denial that he had given any oral statement to the deputy (a denial later contradicted in the deputy's testimony). Finally, counsel obtained an acknowledgement that Mr. Brooks had discussed the incident with other persons before giving the written statement to the deputy and later testifying at trial. On none of these points do we find an accusation of corrupt misconduct by Mr. Brooks, nor do we find a personal attack upon his character as opposed to an attack upon his testimony.

Nevertheless, counsel for Mr. and Mrs. Brooks argues that such an attack may be inferred from the tone of the cross-examiner's questions and from the fact that Mr. Brooks was asked to explain some apparent inconsistencies between his testimony and previous statements. Of course, we are in no position to evaluate the tone of the questions asked. Although we do not discount the importance of voice inflections and gestures during cross-examination, we note that the record in this case contains no reference to such factors by counsel for Mr. and Mrs. Brooks, or by the trial judge, when the question of character evidence was discussed in open court. We decline to speculate on something the record does not show.

■ A more complex problem is posed by the contention that Mr. Brooks' character was impugned by the cross-examiner's questions concerning inconsistent statements. It cannot be gainsaid that identification of such inconsistencies may reflect incidentally upon a witness's credibility. However, if this incidental effect were deemed to constitute an attack upon the witness's character within the meaning of the term "otherwise" in Rule 608(a), then the rule would be swallowed by its own exception.

We concede that cases can be found in which evidence of a witness's good character for truthfulness has been admitted after the witness was impeached with prior inconsistent statements. However, in our reading of such cases, we find that the impeachment often has been accompanied by accusatory insinuations or other derogatory information about the witness's character. For example, in the oft-cited case of *Outlaw v. United States*, 81 F.2d 805 (5th Cir.), *cert. denied*, 298 U.S. 665, 56 S.Ct. 747, 80 L.Ed. 1389 (1936), the character issue concerned a witness who was portrayed as a self-confessed criminal. Similarly, in *United States v. Medical Therapy Sciences, supra*, the witness's character had been attacked with evidence of prior criminal acts. In *People v. Matthews*, 143 Mich.App. 45, 371 N.W.2d 887, 895 (1985), the witness had been accused of being "an adept liar." In *Blakely v. Bates*, 394 N.W. 2d 320, 321 (Iowa 1986), the witness had been described by a doctor as an individual given to exaggerating his injuries and to complaining of problems with no physiological basis.

In other cases, no overt attack upon character was made, but an attack could be discerned by the lack of a reasonable nexus between the impeachment and the issues before the court. Thus, in *Colvin v. Wilson*, 100 Kan. 247, 164 P. 284, 285 (1917),

evidence of good character was allowed because the witness had been impeached on matters of personal conduct "wholly collateral" to the subject of the litigation. *Compare Beard v. Mitchell,* 604 F.2d 485 (7th Cir.1979) (allowing evidence of good character following impeachment with inconsistent statements, but giving no description of the impeaching questions).

The instant case falls outside the pattern of these decisions. The cross-examination of Mr. Brooks was vigorous. However, the cross-examiner's questions concerning inconsistent statements were not accompanied by derogatory allegations or accusatory insinuations regarding Mr. Brooks' character. Neither were the questions directed at matters collateral to the litigation. We hold that the cross-examination of Mr. Brooks did not furnish a predicate, under Rule 608(a), for the trial judge's allowance of opinion testimony as to Mr. Brooks' general character for truthfulness.[2] Admission of this testimony was improper, and it afforded a ground for a new trial under I.R.C.P. 59(a)(1).[3]

Although it is difficult to quantify the prejudicial impact of a trial error from an appellate perspective, we think the likelihood of prejudice in this case was high. There was sharply conflicting testimony regarding the altercation between Mr. Pierson and Mr. Brooks. Both sides presented substantial evidence. In determining who actually did what to whom, the jury was required to evaluate the credibility of the witnesses, particularly Mr. Brooks. Because this evaluation was tainted by the improper admission of character evidence, we conclude that Mrs. Pierson is entitled to a new trial.

In reaching this conclusion, we are aware of a broad suggestion, contained in a recent Supreme Court opinion, that a trial error may be deemed harmless unless it appears that a different result would be "probable" at a retrial. *See Soria v. Sierra Pacific Airlines, Inc.,* 111 Idaho 594, 608, 726 P.2d 706, 720 (1986). With due respect, we have questioned this intertwining of the harmless error doctrine with the rigorous test traditionally applied to motions for new trial upon newly discovered evidence under I.R.C.P. 59(a)(4). *See Davidson v. Beco Corp.,* 112 Idaho 560, 567–72, 733 P.2d 781, 788–93 (Ct.App.1986), *partially overruled on other grounds,* 114 Idaho 107, 753 P.2d 1253 (1987) (on petition for review). Moreover, we note that *Soria* did not explicitly mandate that the probability of a different result be employed as the test on appellate review of orders granting or denying new trials under *every* subsection of Rule 59(a). Indeed, the Supreme Court recently has decided cases under subsection (5), relating to damages, without invoking the *Soria* language. *See Smallwood v. Dick,* 114 Idaho 860, 761 P.2d 1212 (1988); *Quick v. Crane,* 111 Idaho 759, 727 P.2d 1187 (1986) (a case virtually contemporaneous with *Soria*). *Compare Nations v. Bonner Building Supply,* 113 Idaho 568, 746 P.2d 1027 (Ct.App.1987) (applying probability-of-a-different-result standard to a motion for new trial under subsection (6), where the verdict is inconsistent with the evidence).

■ Accordingly, we believe that a new trial is available under Rule 59(a)(1) where, as here, the court has made an erroneous ruling and prejudice is likely. An appellate court need not attempt to quantify the probability of a different result on retrial. It is sufficient that the error was prejudicial and that it reasonably could have affected the outcome of the trial.

---

**2.** We note that even if such opinion testimony had been triggered under Rule 608(a), the testimony went beyond the bounds contemplated by the rule. One witness, a former employer, testified that Mr. Brooks was "a very good" employee, trustworthy with money and valuables, and "very good" in dealing with customers of the witness's business. Another witness, a co-worker at Mr. Brooks' current place of employment, characterized him as a "real dependable" and "all-around good" employee. As noted earlier in our opinion, Rule 608(a) provides that opinion evidence, when allowed, "may refer only to character for truthfulness or untruthfulness...."

**3.** Rule 59(a), at subsection (1), authorizes a new trial when an "[i]rregularity in the proceedings of the court ... or any order of the court" deprives a party of a "fair trial."

## B

■ It has been suggested that even if the issue of Mr. Brooks' conduct was tainted by inadmissible evidence, the jury could have returned a defense verdict upon finding that the altercation was not a causal factor in Mr. Pierson's death. This, of course, is purely speculative because the verdict form did not separate the issues of conduct and causation. Nevertheless, Mr. and Mrs. Brooks argue that if the verdict can be upheld upon any reasonable factual theory, it must not be disturbed.

This argument is an alchemy of two independent principles—that judgments may be affirmed on alternative legal theories, and that findings of fact shall be upheld upon substantial evidence (that is, evidence upon which the trier of fact reasonably could rely). It is conceptually unsound to blend these principles. Moreover, neither principle is germane to the present discussion. The issue here is not whether the judgment below can be sustained by applying an alternative legal theory to a given set of facts. Neither is it whether a particular finding by the trier of fact can be sustained upon any reasonable view of the evidence. Rather, the issue is whether an error affecting the fact-finding process on one issue (conduct) is rendered harmless by a postulated finding that *might* have been made on another issue (causation).

The answer would be "yes" only if the evidence would have required the jury to find a lack of causation. The evidence consisted largely of expert testimony. Physicians called by both sides stated that Mr. Pierson suffered from severe heart disease, including arteriosclerosis and ventricular fibrillation, as well as high blood pressure. One physician opined that Pierson was in danger of sudden death from these conditions at any time. However, the experts did not collectively rule out the altercation as a factor in the timing of Mr. Pierson's demise. Moreover, it clearly would have been permissible for the jury to consider the virtual simultaneity of the altercation and Mr. Pierson's collapse, in determining whether a causal relationship existed. In sum, we believe the evidence did not point to only one reasonable finding. We will not postulate a finding upon such conflicting evidence, for the purpose of invoking the harmless error doctrine. *Accord, P.N. Cedar, Inc. v. D & G Shake Co.,* 110 Idaho 561, 567–68, 716 P.2d 1333, 1339–40 (Ct.App.1986).

We conclude that the error in admitting character evidence, as it related to the credibility of Mr. Brooks' testimony about the altercation, reasonably could have affected the ultimate outcome of the case. The district judge abused his discretion in denying the motion for a new trial.

## C

■ Because the order denying the motion is overturned, we need not analyze all the other grounds cited in support of the motion. However, for guidance on remand we will discuss two additional issues. Mrs. Pierson contends that because intentional tortious conduct was alleged and proven at trial, the judge should have instructed the jury on punitive damages. We disagree. Punitive damages may be awarded only in unusual and compelling circumstances, when the defendant's conduct is extreme and outrageous. *Cheney v. Palos Verdes Investment Corp.,* 104 Idaho 897, 665 P.2d 661 (1983). The present record reveals little or no evidence to support an inference of extreme or outrageous conduct by Mr. Brooks. Even when viewed in the best light for Mrs. Pierson's side of the case, the evidence shows no more than an exchange of words and some physical contact, producing a tragic and wholly unanticipated result. Accordingly, we hold that the trial judge correctly declined to instruct the jury on punitive damages. *See generally Everton v. Blair,* 99 Idaho 14, 576 P.2d 585 (1978) (jury instructions must be based upon issues framed by the evidence at trial).

The second matter of guidance on remand pertains to evidence admitted at trial, showing life insurance benefits Mrs. Pierson had received from one or more policies on her husband's life. It appears that this evidence was offered to rebut, in part, Mrs. Pierson's claim of diminished income result-

ing from her husband's death. For this purpose the evidence did not directly contravene the rationale of the general rule precluding evidence of *liability* insurance. *See Evans v. Park*, 112 Idaho 400, 732 P.2d 369 (Ct.App.1987). However, we caution the trial judge to weigh carefully the probative value of such evidence against its potential for creating unfair prejudice by indirectly influencing the jury's determination of liability. And, although a full explication of the "collateral source rule" (and its limitations) is beyond the scope of this opinion, we further caution the judge to avoid placing the jury in a position to reduce any damage award by deducting the amount of a fund created with the Piersons' own money. *See generally* 22 AM. JUR.2D *Damages* §§ 566–69 (1988).

## II

We next discuss the issues surrounding Mrs. Pierson's claim against Mrs. Brooks for battery. As noted above, the district judge granted a partial judgment n.o.v. in favor of Mrs. Pierson on this claim, awarding $2,500 in damages. Mrs. Pierson now contends that the trial judge abridged her Seventh Amendment right to have damages determined by a jury in a new trial.[4] Mrs. Brooks counters that the trial judge erred in overturning the jury's verdict on this issue. We discuss the latter argument first.

## A

■ The trial judge reasoned that although the actual physical contact was minimal, a battery occurred because the evidence was undisputed that Mrs. Brooks had committed an intentional and unpermitted touching of Mrs. Pierson by grabbing her shirt collar. We agree. *See generally* W. PROSSER AND W. KEETON, THE LAW OF TORTS, § 9 at p. 41 (5th ed. 1984) (battery consists of any intentional, offensive contact upon the person of another without consent).

The record clearly indicates that when Mrs. Pierson moved to aid her husband, Mrs. Brooks grabbed her. Indeed, Mrs. Brooks admitted that she had done so to prevent Mrs. Pierson from assisting Mr. Pierson in his struggle with Mr. Brooks. Physical contact constituting a battery may be justified if committed under the objectively reasonable belief that a third person is in danger of suffering immediate harm. *Id.* at § 20. It is possible that the jury chose to accept Mrs. Brooks' explanation for her actions. However, it is also evident that the trial judge believed there was no substantial evidence showing Mr. Brooks to be in danger of harm from Mrs. Pierson, who was a seventy-year-old woman.

Whether a verdict should have been directed, or a judgment n.o.v. should have been entered, is a question for free review. *Quick v. Crane*, 111 Idaho 759, 727 P.2d 1187 (1986). The appellate court asks, as did the trial court, whether there was substantial evidence supporting the jury's verdict or, in other words, whether reasonable minds could differ as to the verdict that should have been reached. *Id.* In this case we believe the trial judge correctly determined that the jury's verdict on the battery claim was not supported by substantial evidence. Accordingly, we hold that he did not err in granting a judgment n.o.v.

## B

■ We next discuss the question of damages arising out of the battery. Mrs. Pierson asserts that where a jury's verdict of no liability is overturned by a judgment n.o.v., the matter of damages should be submitted to another jury because no jury yet has considered that question. As noted above, Mrs. Pierson's argument is styled loosely in constitutional terms. However, she has not provided, nor has our research disclosed, any authority supporting her position. Nonetheless, we need not resolve this question today because, even if we assume *arguendo* that there is a right to a

---

**4.** *The* Seventh Amendment is not applicable to the states through the Fourteenth Amendment. However, Art. I, § 7, of the Idaho Constitution provides a coextensive guaranty of the right to a jury trial in civil cases.

jury trial on damages after a judgment n.o.v., no reasonable view of the evidence in this case justifies more than nominal monetary relief.

A finding of legal liability does not automatically entitle a litigant to compensatory damages. There can be no recovery for an alleged wrong without showing resultant injury. *Jones v. Talbot*, 87 Idaho 498, 394 P.2d 316 (1964). Here, Pierson presented a prima facie case of battery. However, she failed to produce any evidence that she had sustained a physical or emotional injury, or any economic loss, as a result of having been grabbed by Mrs. Brooks. There was simply no proof of actual damages caused by the battery. In a situation such as this, where evidence concerning a particular issue is undisputed, resolution of the matter is a question of law for the court and not for the jury. *Cf.* I.R.C.P. 56(e) (where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law, the court may enter summary judgment). In the present case, we believe that the trial judge was empowered to fix damages; but he erred in awarding $2,500, a sum that was entirely unsupported by the evidence.

■ Of course, the battery was a civil wrong. As such, it called for redress by an award of nominal damages. *See generally* 2 S. SPEISER, C. KRAUSE & A. GANS, THE AMERICAN LAW OF TORTS, § 8:4 (1985). Generally speaking, nominal damages are awarded for the infraction of a legal right to demonstrate, symbolically, that the plaintiff's person or property have been violated. *See* C. McCORMICK, THE LAW OF DAMAGES, § 20 (1935). However, the sum of $2,500 is more than nominal. It is a sum that appears designed to provide a measure of compensation despite the failure of the evidence to establish a compensable loss. Accordingly, we must vacate the trial court's award and remand for entry of a more appropriate figure.[5]

### III

Mrs. Pierson has raised additional issues concerning the sufficiency of the evidence and the trial court's award of costs to Mr. and Mrs. Brooks as prevailing parties. In view of the outcome of this appeal, we need not reach those issues.

In summary, the judgment of the district court is affirmed as to the issue of punitive damages and as to the claim against Mrs. Brooks for infliction of emotional distress. The judgment is vacated as to the claims of wrongful death, infliction of emotional distress by Mr. Brooks, and the battery by Mrs. Brooks. The case is remanded for proceedings consistent with this opinion. Because neither party has fully prevailed in this appeal, no costs or attorney fees are awarded.

WALTERS, C.J., and SWANSTROM, J., concur.

---

5. In fixing a nominal amount, the court will be limited to the battery claim. As noted earlier, the jury found in favor of Mrs. Brooks on the claims of infliction of emotional distress by her. The trial judge correctly declined to award any post-trial relief to Pierson on that claim. Accordingly, Mrs. Pierson is not entitled to receive an award or to relitigate the claim. We intimate no view as to whether Mrs. Pierson might be entitled to recover for emotional distress allegedly inflicted upon her through Mr. Brooks' conduct.