**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 46439**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) Filed: June 29, 2020 |
| Plaintiff-Respondent, | ) |
| | ) Melanie Gagnepain, Clerk |
| v. | ) |
| | ) |
| MARIO A. REYES, | ) |
| | ) |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Third Judicial District, State of Idaho, Canyon County. Hon. George A. Southworth, District Judge.

Judgment of conviction for domestic battery with traumatic injury, attempted strangulation, and aggravated assault, affirmed.

Eric D. Fredericksen, State Appellate Public Defender; Maya P. Waldron, Deputy Appellate Public Defender, Boise, for appellant. Andrea W. Reynolds argued.

Hon. Lawrence G. Wasden, Attorney General; Jeff Nye, Deputy Attorney General, Boise, for respondent. Andrew V. Wake argued.

---

LORELLO, Judge

Mario A. Reyes appeals from his judgment of conviction for domestic battery with traumatic injury, attempted strangulation, and aggravated assault. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

After patronizing a local bar, Reyes, the victim (Reyes's wife), the victim's niece, and her husband returned to the Reyeses' home and spent time on the back patio until after midnight. The gathering on the patio ended when Reyes and the victim began arguing over Reyes's involvement with another woman. The argument escalated into a physical altercation, which caused the niece to contact emergency services. When officers arrived, Reyes exited his home with the niece's husband. The victim was lying on the kitchen floor (bleeding and

1

semi-conscious with a broken nose and three fractured teeth) and was being attended to by the niece.

The State charged Reyes with aggravated battery, attempted strangulation, malicious injury to property, and domestic battery with traumatic injury. After a jury trial, Reyes was found guilty of domestic battery with traumatic injury, I.C. § 18-918; attempted strangulation, I.C. § 18-923; and aggravated assault, I.C. § 18-907.[1] Reyes appeals, arguing that the district court erred in admitting irrelevant character evidence and the victim's preliminary hearing testimony; that the prosecutor engaged in misconduct during closing argument; and that, even if these errors are harmless singularly, they constitute cumulative error.

## II.

## STANDARD OF REVIEW

The decision to admit evidence is generally reviewed for an abuse of discretion. *State v. Almaraz*, 154 Idaho 584, 590, 301 P.3d 242, 248 (2013). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the lower court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *State v. Herrera*, 164 Idaho 261, 270, 429 P.3d 149, 158 (2018). We review questions of relevance de novo. *State v. Raudebaugh*, 124 Idaho 758, 764, 864 P.2d 596, 602 (1993); *State v. Aguilar*, 154 Idaho 201, 203, 296 P.3d 407, 409 (Ct. App. 2012). A lower court's determination under I.R.E. 403 will not be disturbed on appeal unless it is shown to be an abuse of discretion. *State v. Enno*, 119 Idaho 392, 406, 807 P.2d 610, 624 (1991); *State v. Clark*, 115 Idaho 1056, 1059, 772 P.2d 263, 266 (Ct. App. 1989).

When reviewing allegations of prosecutorial misconduct where there has been a contemporaneous objection, we determine factually if there was prosecutorial misconduct and then determine whether the error was harmless. *State v. Field*, 144 Idaho 559, 571, 165 P.3d 273, 285 (2007); *State v. Phillips*, 144 Idaho 82, 88, 156 P.3d 583, 589 (Ct. App. 2007).

---

[1]   The district court dismissed the malicious injury to property and aggravated battery charges pursuant to an I.C.R. 29 motion by Reyes. In lieu of the aggravated battery charge, the district court instructed the jury on aggravated assault as an included offense.

## III.

## ANALYSIS

Reyes argues that the district court erred by admitting irrelevant, prejudicial character evidence; allowing the State to read the victim's preliminary hearing testimony to the jury; and permitting prosecutorial misconduct during closing argument. Reyes further argues that, even if these errors are harmless individually, they constitute cumulative error. Despite conceding that the district court erred in permitting the jury to hear some inadmissible evidence, the State argues that the errors (both singularly and cumulatively) are harmless. We hold that Reyes has failed to show reversible error.

### A.    Evidentiary Rulings

Reyes argues that the district court erred in admitting irrelevant, unfavorable character evidence. Specifically, Reyes contends the district court abused its discretion by admitting: (1) evidence of a 2015 domestic altercation between Reyes and the victim; (2) the niece's testimony explaining why she asked law enforcement not to tell Reyes who called emergency services; and (3) evidence of Reyes's probation status and prior criminal charges. The State responds that the district court properly admitted evidence of Reyes's conduct during the 2015 domestic altercation and the niece's testimony, but concedes that the district court erred in admitting evidence that Reyes had violated his probation and had prior criminal charges. The State further responds that any evidentiary error was harmless. We hold that Reyes has failed to show reversible error arising from the district court's challenged evidentiary rulings.

Relevant evidence is generally admissible. *State v. Garcia*, ___ Idaho ___, ___, 462 P.3d 1125, 1134-35 (2020). Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. I.R.E. 401; *Garcia*, ___ Idaho at___, 462 P.3d at 1134. Whether a fact is of consequence or material is determined by its relationship to the legal theories presented by the parties. *State v. Johnson*, 148 Idaho 664, 671, 227 P.3d 918, 925 (2010).

### 1.    Impeachment evidence regarding habit

During trial, Reyes testified that he locked himself inside his bedroom after arguing with the victim on the patio and that the victim, her niece, and the niece's husband broke into the

bedroom and attacked him as he slept. Reyes further testified that it was his "usual" practice to lock himself in his bedroom after an argument with the victim.[2] Subsequently, the district court permitted the State to impeach Reyes by cross-examining him regarding a 2015 domestic altercation he had with the victim in which Reyes did not lock himself in his bedroom. Reyes objected, arguing that the 2015 altercation was irrelevant I.R.E 404(b) evidence that was more prejudicial than probative. The district court reasoned that Reyes's testimony that he locked himself in his bedroom after conflicts with the victim made "instances of where [the Reyeses] have been involved in conflict and [Reyes] hasn't gone into the bedroom and locked the door highly relevant."

On appeal, Reyes contends that his testimony did not authorize inquiry into what he did during the 2015 altercation because he testified that he only *usually* locked himself in the bedroom after an argument, not that he *always* did so. Thus, according to Reyes, he did not testify to a habit that would permit impeachment through evidence of specific instances of conduct. We reject Reyes's argument for two reasons.

First, Reyes's argument on appeal is not preserved. Appellate court review is limited to the evidence, theories, and arguments that were presented below. *State v. Garcia-Rodriguez*, 162 Idaho 271, 275, 396 P.3d 700, 704 (2017). As noted, Reyes's objection at trial was based on I.R.E. 404(b) and the weighing required under I.R.E. 403. His argument on appeal, however, focuses on the nuances of his choice of words while testifying without regard to the purpose of his testimony. Reyes's objection in the trial court did not rely on the distinction between "usually" and "always," which is the basis of his appellate argument. In fact, such a distinction is arguably inconsistent with the purpose of his testimony on this point, which was to bolster his

---

[2]    The relevant testimony on direct-examination of Reyes was:

Q.    Okay. And where did you go when you got up to leave?
A.    I headed toward my bedroom.
Q.    Okay. And as you entered the bedroom, what did you do?
A.    I went inside and closed the door. I took off some shorts that I had on, and I laid down in bed.
Q.    Did you lock the door of the bedroom before you went to lay down?
A.    Yes.
Q.    Well, why would you lock the door?
A.    Well, because when I argue with my wife, I usually close the door.

4

claim that he has a habit of locking himself in the bedroom during a domestic altercation. Because the theory Reyes advances on appeal is not preserved, he cannot show the district court abused its discretion on grounds never argued to it. *See State v. Gonzalez*, 165 Idaho 95, 99, 439 P.3d 1267, 1271 (2019) (making clear that "both the issue and the party's position on the issue must be raised before the trial court for it to be properly preserved for appeal").

Second, even if Reyes preserved his appellate challenge to the admission of the impeachment evidence regarding his "usual" habit of locking himself in the bedroom during a domestic altercation, the challenge fails on its merits. Evidence that Reyes acted inconsistently with his usual practice called into question Reyes's version of events and his credibility. Evidence relating to the credibility of a witness is always relevant. *State v. Ehrlick*, 158 Idaho 900, 926, 354 P.3d 462, 488 (2015). Thus, the district court did not err in concluding that whether Reyes locked himself in the bedroom during the 2015 domestic altercation was relevant.

Reyes also challenges the district court's conclusion that evidence of the 2015 domestic altercation was not substantially more prejudicial than probative. A lower court's determination under I.R.E. 403 will not be disturbed on appeal unless it is shown to be an abuse of discretion. *State v. Enno*, 119 Idaho 392, 406, 807 P.2d 610, 624 (1991); *State v. Clark*, 115 Idaho 1056, 1059, 772 P.2d 263, 266 (Ct. App. 1989).

Reyes contends that the district court neither acted consistently with applicable legal standards nor exercised reason in concluding that evidence of Reyes's 2015 domestic altercation was more probative than prejudicial. Specifically, Reyes contends that evidence of his 2015 domestic altercation held little probative value because evidence impeaching his testimony that he usually locked himself in his bedroom after arguing with the victim did not go directly to any element of the crimes with which he was charged. We disagree.

First, evidence that Reyes had not acted consistently with his alleged usual practice of locking himself alone in his bedroom after arguing with the victim was both probative of Reyes's general credibility and impeached his defense--that he was attacked by the victim, niece, and niece's husband after they broke into the bedroom. *See State v. Hairston*, 133 Idaho 496, 503, 988 P.2d 1170, 1177 (1999). Additionally, Reyes had already implied that he had previous arguments with the victim by testifying on direct examination to his usual practice after such arguments, thereby introducing the prejudicial aspect of the 2015 domestic altercation.

5

Consequently, we hold that the district court did not err in concluding that evidence of what Reyes did during the 2015 domestic altercation was not substantially more prejudicial than probative.

### 2.    Niece's testimony

On direct examination, the State questioned the niece about her interactions with law enforcement after they arrived at the Reyeses' residence. Specifically, the prosecutor elicited testimony from the niece that she asked the police to tell Reyes that the neighbors called for emergency services. When the prosecutor asked why the niece made the request, Reyes made a relevance objection. The prosecutor argued that the testimony was relevant to show "motive or bias," which she "assume[d]" Reyes was "going to attack." The district court overruled the objection, after which the following exchange occurred:

[PROSECUTOR]:    Why did you ask the police to tell [Reyes] that the neighbors had called instead of you?
[NIECE]:    Because then [the victim] won't talk to me anymore.
[PROSECUTOR]:    Is [the victim] talking to you at this point in time?
[NIECE]:    No.

Reyes argues that the prosecutor's line of questioning was irrelevant and an improper attempt to rehabilitate the niece's credibility before her credibility was attacked. The State responds that the prosecution is permitted to "draw the sting" out of potentially harmful testimony on direct examination rather than waiting for the defense to attack the credibility of the testimony for the first time on cross-examination.[3] We hold that Reyes has failed to show error in the admission of the niece's testimony explaining why she asked the police to tell Reyes it was the neighbors who called the police.

Reyes relies on *State v. Ellington*, 151 Idaho 53, 253 P.3d 727 (2011) for the proposition that admission of the niece's explanation was improper "to rebut a supposed anticipated attack on [the niece's] credibility." In particular, Reyes quotes the following statement from *Ellington*: "While the prosecution here claims that the question was relevant to rebut anticipated impeachment or attacks on [the witness's] character by the defense by attempting to establish

---

[3]    The State supports this argument with an opinion from the Ohio Supreme Court in which that court held "the state was entitled to 'draw the sting' of cross-examination by bringing out facts discrediting [its witness] on direct." *State v. Sanders*, 750 N.E.2d 90, 110 (Ohio 2001).

that [the witness] was not fired for poor performance, a witness's credibility and character may not be supported before it has been attacked." *Id.* at 62, 253 P.3d at 736. In our view, *Ellington* does not prohibit the explanatory testimony elicited from the niece in this case.

The quoted statement from *Ellington* must first be considered in context. The Court in *Ellington* was analyzing whether the prosecutor committed misconduct by "eliciting a response from a witness that he had only worked at his job for two months because the crime had disturbed him so much." *Id.* at 61-62, 253 P.3d at 735-36. Ellington argued that the question was improper and was asked for the sole purpose of making an emotional appeal to the jury. *Id.* at 62, 253 P.3d at 736. It was in this context that the Court held that the testimony was "highly prejudicial and irrelevant" and noted that the "witness's credibility and character may not be supported before it has been attacked." *Id.* In support of the latter proposition, the Court relied on I.R.E. 608(a)-(b) and the application of I.R.E. 608 in *Pierson v. Brooks*, 115 Idaho 529, 768 P.2d 792 (Ct. App. 1989). *Ellington*, 151 Idaho at 62, 768 P.2d at 736.

As an initial matter, we note that Reyes never objected to the niece's testimony on the basis that it was inadmissible under I.R.E. 608. Rather, Reyes is essentially bootstrapping I.R.E. 608 into the objection he actually made (relevance) by relying on *Ellington*. We question whether doing so is permissible under current preservation standards. *See Gonzalez*, 165 Idaho at 99, 439 P.3d at 1271. Even if it is permissible, neither I.R.E. 608 nor *Pierson*'s application of I.R.E. 608 are relevant to the niece's challenged testimony in this case.

Idaho Rule of Evidence 608(a) provides that evidence of truthful character is only admissible after the witness's character for truthfulness has been attacked. Because the niece's explanation was not offered as evidence of truthful character, the prosecutor was not required to wait to see if Reyes attacked her truthful character on cross-examination before allowing the niece to explain why she wanted the police to lie about who contacted them. Subsection (b) of I.R.E. 608 is similarly inapplicable. Subsection (b) provides that extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. The niece's explanation for her request to the police did not involve a specific instance of conduct to support her character for truthfulness. Thus, I.R.E. 608(b) was not implicated by the niece's testimony. *Pierson* is likewise not applicable to this

case because it merely illustrates the proper application of I.R.E. 608. Because I.R.E. 608 does not apply, neither does *Pierson*.

Moreover, unlike in *Ellington*, Reyes has not and did not assert that the niece's explanation about why she asked the police to lie about who contacted them was not offered to inflame or appeal to the emotions of the jurors, which was the central concern in *Ellington*.[4] Rather, the niece's explanation was related to an unobjected-to question about the *fact* that the niece asked the police to lie about who called them. The niece's explanation was pertinent to her credibility, and credibility is always relevant. *See Ehrlick*, 158 Idaho at 926, 354 P.3d at 488. It is not uncommon or improper for a party to allow one of its witnesses to explain the reasons for his or her actions on direct examination rather than waiting until cross-examination or redirect for the witness to have the opportunity to do so.

### 3. Reyes's probation status and prior criminal charges

Reyes argues that the district court erred by permitting the State to inquire into his probation status and the criminal charges underlying the 2015 domestic altercation. The State concedes that it was error to permit inquiry into Reyes's past criminal charges and that Reyes had *violated* his probation on the night of the altercation by entering a bar and consuming alcohol, but argues the errors were harmless in light of the "overwhelming evidence" presented against Reyes. In reply, Reyes asserts that the State erroneously relies on an "overwhelming evidence" harmless error standard and contends that, under the correct standard, the State failed

---

[4] Following its citation to I.R.E. 608 and *Pierson*, the Court in *Ellington* stated:

> Even more, the length of [the witness's] employment was only before the jury because the prosecutor had intentionally elicited that testimony from him. As with its comment on Mr. Ellington's silence, the prosecution never should have gone down the road of questioning [the witness] about his length of employment knowing full well that it ended with another prejudicial reflection on the disturbing nature of the incident. The testimony regarding why [the witness] had only worked at RMIN for two months was irrelevant at this point in the testimony. The district court sustained the objection to this answer, implicitly acknowledging the low or non-existent probative value and highly prejudicial nature of the answer. Thus, as the district court noted, the testimony "was unnecessarily elicited here from the witness." Thus, we find that there was prosecutorial misconduct.

*Ellington*, 151 Idaho at 63, 253 P.3d at 737.

to meet its burden of showing the alleged errors were harmless. We hold that the admission of evidence regarding Reyes's probation and prior criminal charges was harmless error.

The conceded evidentiary error regarding Reyes's violation of his probation terms and prior charges related to the 2015 domestic altercation occurred during cross-examination of Reyes. The first error occurred during the following exchange:

| | |
|---|---|
| [PROSECUTOR]: | On [the night of the offense in this case], you were on felony probation, correct?[5] |
| [REYES]: | Yes. |
| [PROSECUTOR]: | So you were not supposed to be in a bar were you? |
| [DEFENSE]: | Judge, I'm going to object to relevance. |
| [COURT]: | Overruled. |
| [REYES]: | Correct. |
| [PROSECUTOR]: | And you were not supposed to be drinking either, were you? |
| [REYES]: | Correct. |

The second error occurred during an exchange after the prosecutor presented Reyes with a police report of the 2015 domestic altercation:

| | |
|---|---|
| [PROSECUTOR]: | Do you know what this is, Mr. Reyes? |
| [REYES]: | No. |
| [PROSECUTOR]: | This is a report from the Caldwell Police Department dated November 8th of 2015. It alleges you committed the criminal offense of attempted strangulation, domestic |

---

[5] We reject Reyes's argument that inquiry into his probation *status* was error for two reasons. First, Reyes did not object to the prosecutor's question eliciting the response that Reyes was on probation the night of the altercation. Consequently, the argument that inquiry into his probation status was error is not preserved. *See Garcia-Rodriguez*, 162 Idaho at 275, 396 P.3d at 704. Second, inquiry into Reyes's probation status did not introduce new information prejudicial to Reyes. The prejudicial inference that arises from informing a jury of a defendant's probation status is that it indicates the defendant was convicted of a previous crime. *See State v. Derbyshire*, 201 P.3d 811, 817 (Mont. 2009) ("We begin with the undisputed proposition that evidence of [the defendant's] status as a probationer constitutes evidence that he has committed other crimes . . . ."); *State v. Brown*, 699 P.2d 1122, 1127 (Or. 1985) (en banc) ("We believe evidence of the probationary status of a defendant necessarily reveals the fact that the defendant had committed a prior crime.") Prior to being questioned about his probation status, Reyes had already testified without objection that he had been convicted of intimidating a witness. Consequently, inquiry into whether Reyes was on probation did not suggest the existence of any criminal conduct of which the jury was unaware.

|                |                                                         |
|----------------|---------------------------------------------------------|
|                | battery, malicious injury to property, and witness intimidation.[6] |
| [DEFENSE]:     | Judge, I'm going to object.                              |
| [COURT]:       | Overruled.                                               |
| [PROSECUTOR]:  | You remember this incident, do you not, Mr. Reyes?      |
| [REYES]:       | Yes.                                                     |
| [PROSECUTOR]:  | And you remember that the victim in this particular case three years ago was [also the alleged victim in this case]? |
| [REYES]:       | Yes.                                                     |

On redirect, Reyes testified that all the charges against him for the 2015 altercation were dismissed with the exception of one count of intimidating a witness to which he pled guilty.

Error is not reversible unless it is prejudicial. *State v. Stell*, 162 Idaho 827, 830, 405 P.3d 612, 615 (Ct. App. 2017). With limited exceptions, even constitutional error is not necessarily prejudicial error. *Id.* Thus, we examine whether the alleged error complained of in the present case was harmless. *See State v. Lopez*, 141 Idaho 575, 578, 114 P.3d 133, 136 (Ct. App. 2005). A defendant appealing from an objected-to, nonconstitutionally-based error shall have the duty to establish that such an error occurred, at which point the State shall have the burden of demonstrating that the error is harmless beyond a reasonable doubt. *State v. Montgomery*, 163 Idaho 40, 46, 408 P.3d 38, 44 (2017).

Before addressing the merits of the harmless error analysis, we first address Reyes's argument that the harmless error standard does not allow consideration of whether the evidence was overwhelming. The Idaho Supreme Court recently rejected this argument. In *Garcia*, the Court clarified that, although "the proper showing for 'harmless error' is *not* 'overwhelming evidence' of the defendant's guilt," the quantum of evidence presented at trial is not irrelevant. Thus, "[w]hen the effect of the error is minimal compared to the probative force of the record establishing guilt 'beyond a reasonable doubt' without the error, it can be said that the error did not contribute to the verdict and is therefore harmless." *Garcia*, ___ Idaho at ___, 462 P.3d at 1138 (quoting *Chapman v. California*, 386 U.S. 18, 23 (1967)). It is not incorrect to use the phrase "overwhelming evidence" in the context of harmless error so long as the analysis also

---

[6] Reyes was convicted of intimidating a witness, but all the other charges were dismissed. Reyes does not argue on appeal that the district court erred in admitting evidence of the prior witness intimidation conviction.

weighs the probative force of the error. *Id.* at ___, 462 P.3d at 1138-39. This view of the harmless error standard is consistent with United States Supreme Court precedent.

In *Koatteakos v. United States*, 328 U.S. 750, 758-59 (1946), the Supreme Court considered the meaning of harmless error under the federal statute that precluded reversal for errors that did not affect the substantial rights of the parties. In doing so, the Court stated that, although "it is not the appellate court's function to determine guilt or innocence," nor to "speculate upon probable reconviction and decide according to how the speculation comes out," "this does not mean that the appellate court can escape altogether taking account of the outcome." *Id.* at 763-64. "To weigh the error's effect against the entire setting of the record without relation to the verdict or judgment would be almost to work in a vacuum." *Id.* at 764. The question is "what effect the error had or reasonably be taken to have had upon the jury's decision." *Id.* "The crucial thing is the impact of the thing done wrong on the minds of other men, not on one's own, in the total setting. *This must take account of what the error meant to them, not singled out and standing alone, but in relation to all else that happened.*" *Id.* (citations omitted) (emphasis added). The "all else that happened" necessarily includes all of the evidence presented. It logically follows that a particular error may mean little where the evidence is overwhelming. In other words, the error may not contribute to the verdict where the error is slight and the evidence overwhelming. To be sure, this does not mean the error is harmless just because the evidence was sufficient to sustain a conviction without the improperly admitted evidence. *See Id.* at 765 (explaining that the "inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error"). But, it also does not mean that the existence of overwhelming evidence is irrelevant to a harmless error analysis. Nor can overwhelming evidence be disregarded given the requirement that the reviewing court consider "the entire setting of the record" and "all else that happened" at trial. *Id.* at 764. The Supreme Court's decision in *United States v. Hasting*, 461 U.S. 499 (1983) illustrates this point.

In *Hasting*, the Supreme Court stated that "since *Chapman*, the Court has consistently made clear that it is the duty of a reviewing court to consider the trial record as a whole and to ignore errors that are harmless, including most constitutional violations." *Hasting*, 461 U.S. at 509. The Court phrased the relevant inquiry as whether, absent the error, it is "clear beyond a reasonable doubt that the jury would have returned a verdict of guilty." *Id.* at 511. In answering

11

that question in *Hasting*, the Court outlined the evidence presented by the prosecution and concluded, "a more compelling case of guilt is difficult to imagine." *Id.* The Court contrasted that evidence with the evidence presented by the defense and found that the "defense efforts presented patently and totally inconsistent theories [that] could hardly have escaped the attention of the jurors." *Id.* at 511-12. The Court then commented: "In the face of this *overwhelming evidence* of guilt and the inconsistency of the scanty evidence tendered by the defendants, it is little wonder that the Court of Appeals referred to 'the crimes committed' and acknowledged the 'clear evidence of guilt.'" *Id.* at 512 (emphasis added). The Court then concluded that, "on the whole record, [it was] satisfied beyond a reasonable doubt that the error relied upon was harmless." *Id.*[7]

Turning to the facts of this case, we are satisfied, beyond a reasonable doubt, that the errors based on Reyes's probation violation and charges related to the 2015 domestic altercation were harmless. The State presented thirteen witnesses in its case-in-chief, including the niece, her husband, the officers who responded to the Reyeses' home, two medical professionals who treated the victim, an expert on the dynamics of domestic violence, and a medical expert on strangulation. The niece and her husband testified that, after the argument on the patio, they saw Reyes hold the victim against the bedroom wall by her neck, throw an iron at her, pull her to the ground by her hair, and then kick her in the face hard enough to knock her unconscious. Physical evidence, including pictures of damage to the Reyeses' home and the blood-soaked pillow placed under the victim's head, corroborated this testimony. The jury also saw pictures of the victim's face, neck, chest, arms, and right leg--which showed the swelling, bruising, and broken nose she suffered. Other witness testimony corroborated the testimony of the niece and her husband. The officer who first responded to the scene testified that the victim was in a state of semi-consciousness when he arrived. The dentist and emergency room physician who treated the victim both testified to the victim's injuries. The emergency room physician further testified

---

[7] Reyes dismisses *Hasting* in a footnote, characterizing it as an example of when the "Supreme Court has certainly gotten away from the true meaning of the *Chapman* harmless-error standard at times over the past 50 years." We decline to disregard the Supreme Court's own interpretation and application of its *Chapman* standard in favor of the interpretation advanced by Reyes, particularly in light of the Idaho Supreme Court's clarification of the standard in *Garcia*.

that he listened to the victim identify the cause of her injuries as a domestic altercation with Reyes.

Reyes, on the other hand, presented a defense that was contradicted by physical evidence. Reyes testified that the victim attacked him while he slept and that the only physical contact he initiated with her was to "move her aside" to get her off of him. To explain the victim's injuries, Reyes called a neighbor to testify. Despite living next door, Reyes first met the neighbor while both were incarcerated prior to Reyes's trial. Apparently, Reyes discovered that he was incarcerated with his neighbor after randomly striking up a conversation with him. The neighbor testified that he was on his back patio, having a cigarette, around 2 a.m. on the night of the altercation when he heard the victim fall on the cement patio. The neighbor further testified that he watched the victim go inside holding her face and then heard loud banging sounds and a woman's voice yelling in Spanish inside the Reyeses' home less than a minute later. However, despite the victim bleeding enough to drench a pillow with blood by the time law enforcement arrived and additional blood being found on both the headboard of the Reyeses' bed and the bedroom door frame, no blood was found on either the patio, inside the home between the patio and the bedroom, or on Reyes himself. Not only did Reyes's theory of the case fail to conform with the blood evidence found at the scene, the theory failed to account for all of the victim's injuries. In addition to a broken nose and chipped teeth, the victim also had bruising on her chest, wrist, and around her neck. It would defy reason to reject the version of events testified to by the State's witnesses in favor of the one Reyes proposed--one in which the victim sustained a broken nose and chipped teeth through a fall on the patio; walked from the patio to the bedroom without leaving any blood behind; forced open the bedroom door; and attacked Reyes with the niece and her husband within the space of a minute. Furthermore, according to Reyes's version of events, the niece then called emergency services during the attack she initiated for some unknown reason; the victim suffered unexplained bruising on her neck, wrist, and chest; concocted a consistent story explaining her injuries with the niece and her husband, and then faked the state of semi-consciousness in which officers found her.[8] In light of the probative

_____

[8] Reyes also makes a passing suggestion that the inquiry into his probation status and past crimes constituted prosecutorial misconduct. However, Reyes did not object to this line of questioning during trial as constituting prosecutorial misconduct. Consequently, the alleged

13

weight of the evidence of Reyes's guilt and the implausibility of Reyes's defense, the erroneous admission of evidence of Reyes's probation violation and past criminal charges, which had little probative force when considered in context, was harmless.

**B.      Preliminary Hearing Testimony**

Reyes argues the district court erred in permitting the State to read the victim's preliminary hearing testimony to the jury. Reyes contends that the State failed to establish that the victim was unavailable as required by I.R.E. 804(b)(1) because she was under subpoena to testify for the defense the next day. The State responds that the district court correctly concluded that the victim was unavailable and, even if the district court erred, the error was harmless because the evidence became admissible when the victim invoked her Fifth Amendment rights and because her testimony was duplicative of other evidence. We hold that the district court did not err in finding the victim was unavailable.

Idaho Rule of Evidence 804(b)(1) authorizes the admission of the former testimony of a witness who is unavailable to testify at trial. The determination that a witness is unavailable such that preliminary hearing testimony is admissible is discretionary. *See State v. Anderson*, 162 Idaho 610, 617, 402 P.3d 1063, 1070 (2017). A witness's unavailability must be established by the proponent of the testimony. *State v. Perry*, 144 Idaho 266, 269, 159 P.3d 903, 906 (Ct. App. 2007). A trial court's factual findings as to whether these requirements are satisfied will not be disturbed on appeal unless they are clearly erroneous. *Id.* Clear error will be found on appellate review if the trial court's findings are not supported by substantial and competent evidence. *Id.*

The district court concluded that the victim was unavailable for purposes of I.R.E. 804(b)(1). In support of this conclusion, the district court found that the State had been

---

error is not reviewable absent fundamental error. Because Reyes neither argued that inquiry into his probation status and prior criminal charges was fundamental error nor cited the applicable standard of review, we will not consider the issue further. *See State v. Kralovec*, 161 Idaho 569, 575 n.2, 388 P.3d 583, 589 n.2 (2017) (observing that arguments that fail to address the applicable standard of review are fatally deficient).

unable to serve the victim with a subpoena for the correct trial date[9] despite good faith efforts to do so. The State was then permitted to read portions of the victim's preliminary hearing testimony to the jury. The next day, although the victim appeared pursuant to Reyes's subpoena, she invoked her Fifth Amendment rights and was excused without testifying about her altercation with Reyes.

Reyes argues that the district court erred in concluding that the victim was unavailable because she was already under a defense subpoena to testify the day after the State intended to call her as a witness. We disagree. Reyes's subpoena gave him, not the prosecution, control over the victim's obligation to testify. Reyes could have released the victim from the subpoena prior to testifying. Thus, at the time the district court found the victim unavailable, nothing indicated that the prosecution could make the victim available to testify. Consequently, Reyes's subpoena does not undermine the district court's finding that the victim was unavailable at the time the finding was made. Reyes has failed to show error in the admission of the victim's preliminary hearing testimony.

## C.    Prosecutorial Misconduct

Reyes argues that the prosecutor engaged in misconduct during closing argument by implying that the victim was reluctant to testify due to fear of her husband or potential perjury charges. The State responds that the prosecutor's comments were directed toward the victim's embarrassment and fear of recounting her abuse to strangers--not fear of her husband or perjury charges. We hold that the prosecutor's comments during closing argument regarding the victim's reluctance to testify were not improper.

Closing argument serves to sharpen and clarify the issues for resolution by the trier of fact in a criminal case. *Phillips*, 144 Idaho at 86, 156 P.3d at 587. Its purpose is to enlighten the jury and to help the jurors remember and interpret the evidence. *Id.*; *State v. Reynolds*, 120 Idaho 445, 450, 816 P.2d 1002, 1007 (Ct. App. 1991). Both sides have traditionally been afforded considerable latitude in closing argument to the jury and are entitled to discuss fully,

---

[9]    The evidence produced at trial indicated that the State served the victim with a subpoena for an alternative trial date, but was unable to serve her with another subpoena for the actual trial date because the victim appeared to be avoiding service.

from their respective standpoints, the evidence and the inferences to be drawn therefrom. *State v. Sheahan*, 139 Idaho 267, 280, 77 P.3d 956, 969 (2003); *Phillips*, 144 Idaho at 86, 156 P.3d at 587.

During closing argument, the prosecutor told the jury:

In a perfect world, [the victim] would have told you again what happened. But you know what happened. . . .

You heard testimony from [the domestic violence investigator] that victims of domestic violence recant. When we were talking in voir dire, most of you knew someone who had been a victim of domestic violence. Some of you had watched [video of another domestic violence perpetrator] and had watched [that perpetrator's victim] recant. Some of you were horrified by the fact that might happen.

[The investigator] told you that police departments like the Boise Police Department have to have special detectives to deal with cases like this. Why? Because victims recant. Because they're reluctant to come in and tell what's happened.

[The victim] was brave enough to tell her story to emergency room doctors, to a dentist, [and] under oath [during the preliminary hearing]. The fact that you didn't hear it from her again today shouldn't prevent you from doing what needs to be done. You have all of the evidence to convict [Reyes] in this case of all these charges.

Certainly [the victim] is probably scared.

. . . .

Why would she want to come in and say what happened again? Tell a room full of strangers that the person who vowed to love, honor and cherish her did this to her . . . .

Reyes contends that the foregoing comments should be interpreted as implying that the victim was afraid to testify because of fear of her husband or potential perjury charges. Reyes's argument is unpersuasive. A court should not easily infer that a prosecutor intended for an ambiguous remark to have its most damaging meaning or that a jury would draw that meaning from among other less damaging interpretations. *Donnelly v. DeChristoforo*, 416 U.S. 637, 646-47 (1974). Understood in context, in particular the reference to the domestic violence investigator's testimony, the prosecutor's comments are best interpreted as an argument that the victim was reluctant to testify because she wanted to avoid the humiliation of recounting her abuse to the jury. This argument was proper as it was based upon the evidence admitted during trial. *See State v. Miller*, 165 Idaho 115, 122, 443 P.3d 129, 136 (2019). Consequently, Reyes has failed to show that the prosecutor engaged in misconduct during closing argument.

**D.** **Cumulative Error**

Reyes also contends that the cumulative error doctrine applies, necessitating a reversal of his conviction. Under the doctrine of cumulative error, a series of errors (harmless in and of themselves) may in the aggregate show the absence of a fair trial. *State v. Adamcik*, 152 Idaho 445, 483, 272 P.3d 417, 455 (2012). As set forth above, the only errors that occurred in Reyes's trial were the inquiry into Reyes's violation of his probation conditions on the night of the altercation and his previous criminal charges. Considering the probative weight of the evidence of Reyes's guilt and the implausibility of his version of events against the prejudicial effect of the errors, we are unpersuaded that the errors cumulatively denied Reyes a fair trial.

## IV.
## CONCLUSION

Reyes has failed to show that any irregularities in his trial, either singularly or cumulatively, constitute reversible error. Consequently, Reyes's judgment of conviction for domestic battery with traumatic injury, attempted strangulation, and aggravated assault is affirmed.

Chief Judge HUSKEY and Judge GRATTON, **CONCUR**.